*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 08a0373p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

ARMALITE, INC.,

        *Petitioner-Appellant,*

     *v.*

MARCIA F. LAMBERT, Director of Industry
Operations, Columbus Field Division, Bureau of
Alcohol, Tobacco, Firearms & Explosives,
        *Respondent-Appellee.*

No. 07-4290

>

---

Appeal from the United States District Court
for the Northern District of Ohio at Toledo.
No. 06-02929—Jack Zouhary, District Judge.

Argued: July 23, 2008

Decided and Filed: October 14, 2008

Before: SUTTON and COOK, Circuit Judges; ROSE, District Judge.[*]

---

## COUNSEL

**ARGUED:** Richard E. Gardiner, Fairfax, Virginia, for Appellant. Robert G. Young, ASSISTANT UNITED STATES ATTORNEY, Toledo, Ohio, for Appellee. **ON BRIEF:** Richard E. Gardiner, Fairfax, Virginia, for Appellant. Robert G. Young, ASSISTANT UNITED STATES ATTORNEY, Toledo, Ohio, for Appellee.

---

## OPINION

---

    SUTTON, Circuit Judge. Armalite is an Illinois corporation licensed to sell guns in Ohio. In this appeal, it asks us to reverse the Bureau of Alcohol, Tobacco, Firearms & Explosives's (ATF) revocation of its license for "willfully" violating the Gun Control Act of 1968 (GCA), 18 U.S.C. §§ 921–928. We affirm.

---

[*]The Honorable Thomas M. Rose, United States District Judge for the Southern District of Ohio, sitting by designation.

I.

In 1999, Armalite acquired a federal license to sell guns in Ohio. As a licensee, Armalite had to comply with several record-keeping requirements administered by the ATF. *See* 18 U.S.C. § 923. In July 1999, the ATF inspected Armalite's operations and educated the company's president, Mark Westrom, about those duties. Westrom acknowledged that the "information was thoroughly explained . . . and any questions . . . were answered." JA I at 104.

In 2004, the ATF inspected Armalite's transaction records, known as Form 4473 records, which the GCA requires licensees to keep to verify that all over-the-counter transactions involve qualified purchasers. *See* 27 C.F.R. § 478.124. The ATF officials found several deficiencies, including: failing to complete a background check through the National Instant Background Check System (two times); omitting identification from the buyer (three times); improperly executing and completing a form (eleven times); and neglecting separately to file Forms 4473 for transactions not culminating in sales (four times). The ATF also cited Armalite's unauthorized use of an electronic Acquisition and Disposition Record (A&D Record).

The ATF mailed Westrom a report of the violations, including copies of the faulty forms with errors highlighted and corrective instructions. The ATF cautioned that "[w]e will conduct a follow-up inspection in the future," and "[a]ny violations, either repeat or otherwise, could be viewed as willful and may result in the revocation of your license." JA I at 167. Westrom again acknowledged that the ATF explained the law's requirements to him.

A 2005 inspection revealed more violations—some of the same type, some not. In addition to its continued failure to obtain permission to compile an electronic A&D Record, Armalite implemented the unapproved format poorly: Eighteen weapons in Armalite's physical inventory were unrecorded; six disposed-of guns were not entered; four others were entered but given incorrect serial numbers; and Armalite entered multiple acquisitions of the same gun on four occasions. ATF officials also reviewed 74 Form 4473 records, finding more mistakes, including: failing to date the form properly (eight times); failing to include aspects of the buyer's identification (five times); failing to fill in each required block (eleven times); and failing to identify the type of firearm sold (six times). Forty forms erroneously reported or omitted background-check information. Armalite also failed to prepare a required "Report of Multiple Sale" when it sold two handguns to one person, and it also impermissibly transferred a handgun to a non-Ohioan. In view of these findings, the ATF charged Armalite with violating the GCA in thirteen counts and gave Armalite notice that, subject to a hearing, the agency intended to revoke its license.

At the revocation hearing, Westrom challenged the ATF's conclusion that Armalite acted willfully. In response to Count One—transferring a handgun to a non-licensee who did not reside in Ohio—Westrom explained that Armalite rarely sold handguns and thus had little experience preparing the forms for those sales. He offered a similar response to the failure to complete the Report of Multiple Sale. The company's vice president attributed many of the mistakes to human error, and Westrom echoed the point by saying that the Form 4473 omissions were "[p]rocessing errors." JA II at 125. Problems with the A&D Record, Westrom explained, stemmed from mixed-up computer disks, and mistakes with the serial numbers were "self-healing" in that any inconsistencies later became apparent and were easily corrected. JA II at 123. Westrom also believed, until informed otherwise at the 2005 inspection, that Armalite had been given permission to use the computerized A&D Record.

The hearing officer was not persuaded. The officer labeled Armalite's handgun transfer to a non-resident "troubling in that it is a very basic understanding by the firearms dealer community that you cannot sell a handgun to a non-licensed resident of another state. . . . The fact that Mr. Westrom seemed to explain this error because they are used to doing business in Illinois and this is

an Illinois resident seems strained." JA I at 67. Westrom's explanations for failing to prepare a Report of Multiple Sale, the officer added, would have had more of "a mitigating effect had Mr. Westrom not been the recipient of two educational efforts (in 1999 and 2004) and [had] he [not] acknowledged giving the regulations a brief look each year." JA I at 68. The officer made similar findings on most of the other counts. (The officer amended one charge to show that Armalite had listed the background-check information in the wrong block rather than omitted it, and he did not consider one of the proposed counts.)

On October 10, 2006, the ATF issued a Final Notice of Revocation. Relying on this court's decision in *Appalachian Resources Development Corp. v. McCabe*, 387 F.3d 461, 464 (6th Cir. 2004), the ATF concluded that "[w]here a Federal firearms dealer knows his legal obligations and purposefully disregards or is plainly indifferent to these obligations, such violations are committed willfully." JA 99. As measured by that standard, the ATF concluded, Armalite's violations were clearly willful:

> In that the Government has demonstrated previous, similar deficiencies in the inspection of 2004, in that the violations found in 2005 had significantly increased from those found in 2004, in that Armalite took no positive action to ensure the violations of 2004 would not reoccur by reviewing employee actions and required record entries, in that the licensee introduced no evidence of the "switched disk" error, in that Mr. Westrom testified that he did not, in fact, make the effort to specifically examine the 18 firearms not found in the record and the 6 firearms not timely entered as disposed in the record, in that the licensee could simply not find two firearms that should have been in inventory which required the submission of a theft and/or loss report to ATF, in that significant correspondence from ATF was not given the attention it deserved, and in that Mr. Westrom was the beneficiary of two separate educational efforts, I find that the licensee has exhibited a plain indifference, and one might even argue a careless disregard, to their legal requirements under the Gun Control Act and the violations herein at issue were willfully committed. The actions by the licensee do not demonstrate those of a company who has taken the problems found in 2004 to heart.

JA 97.

Armalite sought judicial review of the ATF's decision under 18 U.S.C. § 923(f)(3), which permits "de novo judicial review" of a license revocation. The district court granted the government's motion for summary judgment. *See Armalite, Inc. v. Lambert*, 512 F. Supp. 2d 1070 (N.D. Ohio 2007). Armalite appealed, principally arguing that the district court incorrectly applied the GCA's willfulness requirement.

II.

Under § 923(e), "the Attorney General may, after notice and opportunity for hearing, revoke any license issued under this section if the holder of such license has *willfully* violated *any* provision of this chapter or any rule or regulation prescribed by the Attorney General under this chapter." 18 U.S.C. § 923(e) (emphasis added). Because the government may revoke a license if the licensee willfully violates "any" provision of the GCA, *id.*, a single willful violation of the GCA, or of its rules and regulations, suffices to revoke a firearms license. *Appalachian Resources*, 387 F.3d at 464. Summary judgment is therefore appropriate if no genuine issue of material fact exists about whether Armalite willfully violated an applicable statutory or regulatory provision.

That leaves two questions for us to answer: (1) What does it mean to violate the GCA "willfully," and (2) did Armalite "willfully" violate the statute?

A.

The parties offer competing interpretations of "willfully" as used in § 923(e). Armalite maintains that a willful violation occurs only when a dealer intentionally, knowingly or recklessly violates known legal obligations. The government responds that, so long as a dealer appreciates its duties under the GCA, the statute punishes even negligent violations. In refereeing this dispute, we start by considering what our own precedents have said about the matter.

In *Appalachian Resources*, this court defined "willful" violations of the GCA in this way: "[W]here a licensee understands his or her legal obligations under the GCA, yet fails to abide by those obligations, his or her license can be denied or revoked on the basis that the dealer 'willfully' violated the GCA." 387 F.3d at 464. What this articulation of the standard leaves unclear is whether the "understand[ing]" that the licensee must have of its obligations under the GCA suffices by itself to establish the requisite mens rea for a violation or whether the violation itself still must be committed intentionally, knowingly or recklessly. One possibility is this: a dealer violates the statute when it (1) knows what its legal obligations are and (2) fails to comply with those obligations, whether that failure to comply was intentional, reckless or negligent. The other possibility is this: a dealer violates the statute when, with knowledge of what the law requires, it intentionally or knowingly violates the GCA's requirements or acts with plain indifference to them (i.e. recklessly violates them).

We embrace the second interpretation for several reasons. *First*, it is consistent with all appellate decisions on point. Five other circuit courts have considered the issue, and each of them has held that a willful violation of the GCA requires a deliberate, knowing or reckless violation of its requirements. *See RSM, Inc. v. Herbert*, 466 F.3d 316, 321 (4th Cir. 2006) ("Thus, when determining the willfulness of conduct [under the GCA], we must determine whether the acts were committed in *deliberate* disregard of, or with *plain indifference* toward, either known legal obligations or the general unlawfulness of the actions.") (emphasis added); *Willingham Sports, Inc. v. ATF*, 415 F.3d 1274, 1277 (11th Cir. 2005) ("We agree with those five circuits that a showing of *purposeful* disregard of or *plain indifference* to the laws and regulations imposed on firearms dealers shows willfulness . . . .") (emphasis added); *Perri v. ATF*, 637 F.2d 1332, 1336 (9th Cir. 1981) (noting that a willful violation of the GCA "is established when a dealer understands the requirements of the law, but *knowingly* fails to follow them or was *indifferent* to them.") (emphasis added); *Stein's Inc. v. Blumenthal*, 649 F.2d 463, 467 (7th Cir. 1980) ("The Secretary need only prove that the petitioner knew of his legal obligation and *purposefully* disregarded or was *plainly indifferent* to the recordkeeping requirements.") (emphasis added) (internal quotation marks omitted); *Lewin v. Blumenthal*, 590 F.2d 268, 269 (8th Cir. 1979) ("[T]he Bureau must prove that the petitioner knew of his legal obligation and *purposefully* disregarded or was *plainly indifferent* to the recordkeeping requirements.") (emphasis added). Not one of these courts held that a negligent violation of the statute suffices to establish a cognizable GCA violation.

*Second*, nothing in *Appalachian Resources* indicates that the panel meant to break from this consensus, and the opinion offers several indications that it was standing by these precedents. In support of its analysis, the court explicitly relied on three of the above decisions as evidence of what a "majority of circuits . . . have consistently held" about the meaning of "willfully" under the GCA— and as consistent with what the court was doing there. *Appalachian Resources*, 387 F.3d at 464 (citing *Perri*, 637 F.2d at 1336, *Stein's Inc.*, 649 F.2d at 467, and *Lewin*, 590 F.2d at 269). When, as here, there is an ambiguity in what one of our decisions means and when, as here, that decision purports to embrace a standard that is consistent with a "wealth of case law," *id*. at 465, it makes considerable sense to construe our precedent as following this unbending line of circuit precedent rather than breaking from it.

*Third*, in defining willful violations of the GCA, *Appalachian Resources* did not signal that it was breaking from the background principle against which Congress enacted the statute—namely the "standard civil usage" of the word "willfully." *Safeco Ins. Co. of Am. v. Burr*, ___ U.S. ___ , 127 S. Ct. 2201, 2209 (2007). "[W]here willfulness is a statutory condition of civil liability, [the Supreme Court has] generally taken it to cover not only knowing violations of a standard, but reckless ones as well." *Id.* at 2208. *Appalachian Resources* offers no indication that it meant to deviate from this classic definition of willfulness (and to sweep negligent violations of the statute within its coverage), and nothing in the statute offers any basis for thinking that Congress meant to do so either. *Cf. RSM, Inc.*, 466 F.3d at 321–322 & n.1 (pre-*Safeco* decision construing "willfully" in § 923(e) "in accordance with [the] construction of the term in the criminal context" but adopting a definition that does not reach merely negligent conduct and that is relatively consistent with the other circuits, seemingly differing only insofar as it recognizes that a dealer may act willfully if it had "a . . . general knowledge that [its] conduct [was] unlawful").

In resolving this ambiguity in *Appalachian Resources*, we thus conclude that the court did not mean to announce a new standard of willfulness, one that breaks from customary usage, that deviates from all relevant decisions by our sister circuits and that is inconsistent with the Supreme Court's most recent guidance on the point in *Safeco*. We take *Appalachian Resources* at its word when it relied on the "wealth of case law" in defining the term "willfully," which is to say: A dealer "willfully" violates the GCA when it intentionally, knowingly or recklessly violates known legal requirements. Just as *Safeco* construed the phrase "willfully fails to comply" to reach only deliberate, knowing or reckless statutory violations, 127 S.Ct. at 2209, so we interpret the phrase "willfully violated" to do the same.

B.

That leads to the second question: Did Armalite "willfully" violate the GCA by intentionally, knowingly or recklessly violating known legal obligations? Yes.

To preclude the grant of summary judgment, Armalite must establish that genuine issues of material fact exist as to each of the ATF's charged violations. It cannot. Because a single violation suffices, we need not scour each charge in the ATF's revocation notice. *See Appalachian Resources*, 387 F.3d at 464 (stating that "a single violation of the GCA is a sufficient basis for denying an application or revoking a firearms dealer's license"). It suffices that the ATF had ample bases for the charge contained in Count Three of ATF's complaint—failure to provide the information required in blocks 24 and 27 of Form 4473 on six occasions.

When making an over-the-counter transfer of a firearm to a non-licensee, a firearm dealer must "identify the firearm to be transferred by listing on the Form 4473 the name of the manufacturer, the name of the importer (if any), the type, model, caliber or gauge, and the serial number of the firearm." 27 C.F.R. § 478.124(c)(4); 18 U.S.C. § 922(m). No one debates Armalite's appreciation of this requirement. The ATF twice alerted Armalite about its obligations under the GCA, and Westrom twice acknowledged its understanding of them. Westrom's own testimony confirms his familiarity with the law's requirements. He testified that he knew that a licensee could not transfer a handgun to an out-of-state resident, that a multiple sale form was required for selling two guns to the same person in a short span, that each firearm was to be entered only once in the A&D Record and that he was "responsible for the Gun Control Act regulations that appl[ied] to the operation of his business." JA II at 132.

During the 2005 inspection, ATF agents discovered that, of the 74 forms examined, Armalite failed to enter the name of the manufacturer on two forms, the type of firearm on three forms and both the name of the manufacturer and the type of firearm on one form. Westrom admitted that the

omissions violated the requirements of the GCA but said that they were mere "[p]rocessing errors" of little consequence. JA II at 125.

But on this record, those omissions amounted to reckless violations of known legal obligations or what comes to the same thing: a plain indifference to known legal obligations. The 2004 compliance inspection revealed that Armalite had significant problems accurately and fully completing 4473 forms. Of the 111 forms reviewed in 2004, 24 had not been properly completed. In response, the ATF issued a Report of Violations setting forth specific violations and forwarded that report to Westrom, including instructions for corrective action. The ATF agents discussed those violations with Armalite and told it to take steps to ensure future compliance. Armalite, moreover, was told that the ATF would "conduct a follow-up inspection in the future," and that "[a]ny violations, either repeat or otherwise, could be viewed as willful and may result in the revocation of [Armalite's] license." JA I at 167.

But when the ATF conducted a follow-up inspection in 2005, it found errors, new and old, in over half of the forms it reviewed. Although the blocks 24 and 27 omissions were new in 2005, that does not make the violations any less reckless. The essence of Armalite's plain indifference to the legal requirements of 27 C.F.R. § 478.124(c)(4) lies in its consistent failure to ensure full and accurate completion of 4473 forms. Although it knew that its employees were not fully and accurately completing the forms, Armalite chose not to take steps to ensure future compliance. At some point, repeated negligence becomes recklessness, and that point arrived for Armalite in 2005. *See RSM, Inc.*, 466 F.3d at 322; *Article II Gun Shop, Inc. v. Gonzales*, 441 F.3d 492, 498 (7th Cir. 2006). On this record, the failure to include the information required by 27 C.F.R. § 478.124(c)(4) on six instances is not a mere "processing error[]," but a reckless disregard for known legal obligations. The ATF was authorized as a matter of law to revoke Armalite's license based on the willful violations identified in this charge.

III.

For these reasons, we affirm.