PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

AMERICAN ARMS INTERNATIONAL,
trading as Gilbert Guns Unlimited;
GILBERT INDOOR RANGE, LLC,

        *Petitioners-Appellants,*

v.

ARTHUR W. HERBERT, Director of
Industry Operations, Bureau of
Alcohol, Tobacco, Firearms and
Explosives,

        *Respondent-Appellee.*

No. 08-1302

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Deborah K. Chasanow, District Judge.
(8:06-cv-02468-DKC)

Argued: January 29, 2009

Decided: April 20, 2009

Before GREGORY and DUNCAN, Circuit Judges, and
Arthur L. ALARCÓN, Senior Circuit Judge of the United
States Court of Appeals for the Ninth Circuit, sitting by
designation.

Affirmed by published opinion. Judge Gregory wrote the
opinion, in which Judge Duncan and Senior Judge Alarcón
joined.

## COUNSEL

**ARGUED:** Richard E. Gardiner, Fairfax, Virginia, for Appellants. Ariana Wright Arnold, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee. Rod J. Rosenstein, United States Attorney, Baltimore, Maryland; Jeffrey A. Cohen, ATF Associate Chief Counsel, Philadelphia, Pennsylvania, for Appellee.

## OPINION

GREGORY, Circuit Judge:

Appellants American Arms International ("AAI") and Gilbert Indoor Range, LLC ("GIR") appeal the judgment of the district court upholding the decision of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") to revoke AAI's firearms dealer's license and to deny GIR's application for a new firearms license. Over the past three decades, Charles Gilbert, the owner of both AAI and GIR, has been cited by the ATF multiple times for numerous violations of the regulatory requirements of the Gun Control Act of 1968 ("GCA"), *codified as amended* at 18 U.S.C. § 921 *et seq.* (2006). The decision to revoke AAI's license and to deny GIR's license application was prompted by a 2003 ATF inspection of Gilbert's operations in which thousands of record-keeping and other violations were discovered. Our de novo review of this appeal reveals no error in the district court's grant of summary judgment to ATF, and we therefore affirm.

I.

The ATF first inspected Gilbert's operations in February 1984, and the inspection revealed that Gilbert had failed to record both the transfer of twenty-three firearms and the acquisition of six National Firearms Act ("NFA") firearms in

the store's Acquisition and Disposition Records ("A&D Records").[1] ATF cited Gilbert for these and other violations.

In June 1986, ATF sent Gilbert a warning letter after another ATF inspection revealed a number of new regulatory violations. The letter advised that "failure to conduct future operations in accordance with the regulations . . . will be considered willful and could result in administrative proceedings to revoke your license." (1 Admin. R. ("A.R.") 23.) Gilbert was cited again in July 1987 for, inter alia, failure to record the disposition of seven missing firearms, failure to properly maintain disposition records for repaired firearms, and improper maintenance of ATF Form 4473.[2]

In 1991, an ATF inspector found another discrepancy in an inventory of Gilbert's NFA firearms, as well as at least one other record-keeping violation. The inspector recommended that ATF issue an admonitory letter. In June 2000, an inspection revealed nineteen instances where Gilbert failed to record

---

[1]The GCA requires firearm dealers to maintain "such records of importation, production, shipment, receipt, sale, or other disposition of firearms at his place of business for such period, and in such form, as the Attorney General may by regulations prescribe." 18 U.S.C. § 923(g)(1)(A) (2006); *see also* 27 C.F.R. § 478.125(e) (2008) ("[E]ach licensed dealer shall enter into a record each receipt and disposition of firearms."). Failure to properly maintain these records is a violation of federal law. 18 U.S.C. § 922(m) (2006). Proper records maintenance is crucial to law enforcement, which uses the information contained in these records to trace firearms involved in crimes. *See Blaustein & Reich, Inc. v. Buckles*, 365 F.3d 281, 284 (4th Cir. 2004).

The NFA imposes a statutory excise tax on the manufacture and transfer of statutorily defined "firearms", 26 U.S.C. § 5801 (2006), and mandates special registration and recording requirements for those weapons, 26 U.S.C. §§ 5841, 5843 (2006).

[2]ATF Form 4473 is the record that licensees are required "to keep to verify that all over-the-counter transactions involve qualified purchasers." *Armalite, Inc. v. Lambert*, 544 F.3d 644, 645 (6th Cir. 2008); *see also* 27 C.F.R. § 478.124 (2008).

the date of sale in his A&D Records and numerous failures to ensure proper completion of ATF Form 4473.

In December 2000, when Gilbert was applying to renew his dealer's license, an ATF inspector met with him to review the federal firearms regulations, including all record-keeping, requirements. An ATF inspector held a similar review of the regulations with Gilbert in September 2002, covering requirements for maintenance of A&D Records, proper completion of ATF Form 4473, and reporting of missing firearms.

Nonetheless, in an August 2003 inspection of Gilbert's operations, inspectors discovered thousands of regulatory violations. A review of Gilbert's inventory revealed that 427 firearms were missing, meaning they were not locatable either in physical inventory or the A&D Records. The inspection further found a number of discrepancies in the A&D Records, including the following: on 85 occasions, Gilbert failed to record disposition information in the A&D Records within seven days of disposition; on 118 occasions, Gilbert failed to report a federal firearms license number in the acquisition section of the A&D Records; on two occasions, Gilbert failed to report the name and address of the person from whom a firearm was received; and, on one occasion, Gilbert failed to record the disposition date of a firearm in the A&D Record. The inspection further found that Gilbert had been using an expired ammunition manufacturer license number rather than his actual dealer's license number to stamp at least 250 ATF Forms 4473.[3] The inspection also turned up numerous additional violations related to improperly filling out ATF Form 4473, including failing on thirty occasions to properly complete the needed information for a transfer of NFA weapons to non-licensees; failing in thirteen instances to obtained the

---

[3]The inspector looked at only a sample of ATF Forms 4473 and this particular violation was found on all 250 forms reviewed. Thus it seems likely that the number of violations actually went well beyond the sample number, affecting potentially thousands of ATF Forms 4473.

required additional documentation to establish residence for legal-alien purchasers prior to transferring a firearm; and failing on six occasions to include National Instant Criminal Background Check ("NICS") information with ATF Form 4473. Gilbert was also cited for failing to timely report the theft or loss of firearms; transferring a firearm to a Virginia resident in violation of Virginia and federal law, transferring a firearm to someone who indicated on ATF Form 4473 that she was not the firearm purchaser, and illegally operating as a gunsmith at an unlicensed premise.

As a result of the 2003 inspection, ATF issued a Notice of Revocation of License to AAI on January 21, 2005. The Notice indicated that AAI had willfully violated the provisions and regulations of the GCA and it detailed the aforementioned history of noncompliance. On January 13, 2006, the ATF issued a Notice of Denial for GIR's application for renewal of its federal firearms license.

At Gilbert's request, a hearing regarding these decisions was held before an ATF Hearing Officer on March 30, 2006. At this hearing, Gilbert, represented by counsel, introduced no evidence to contest the factual basis for the revocation and denial, and he refused to testify when called as a witness by the Government. On May 22, 2006, the Hearing Officer issued his report, recommending revocation and denial.

On June 24, 2006, ATF's Director of Industry Operations for the Baltimore Field Division, Arthur Herbert, issued a Final Notice of Revocation/Denial to Gilbert. The Final Notice stated that Gilbert had "willfully engaged in repeat violations of the Gun Control Act." (2 A.R. 796.) At Gilbert's request, ATF stayed the effective date of the revocation pending review by the United States District Court for the District of Maryland pursuant to 18 U.S.C. § 923(f)(3) (2006).[4]

---

[4]Section 923(f)(3) of Title 18 of the U.S. Code. provides:

Gilbert's petition for review asked the district court to "1) decide that [ATF] erred and was not authorized to revoke AAI's license or to deny GIR's license application; 2) order [ATF] to withdraw the revocation and denial; and 3) award such other relief, including costs and attorney's fees . . . as appropriate." (J.A. 32.) Instead, the district court granted summary judgment to ATF on February 19, 2008.

The administrative record was essentially the only evidence before the district court at summary judgment. The only additional evidence Gilbert provided to the district court was his own affidavit in which he denied that any of the violations for which he was cited by the ATF were willful. He characterized many of them instead as "clerical" in nature. Then, while not specifically denying any of the violations (except the allegation that he operated as a gunsmith at an unlicensed premises), he proceeded to explain the circumstances surrounding each violation: how he remedied (or attempted to remedy) the violation, how he had arranged alternative procedures for accomplishing the purpose of the given violated regulation, or how he had been unaware of the unlawful nature of his actions at the time. He also noted that in a May 2001 inspection, the inspector had told him that AAI was doing a "good job." (J.A. 227.)

In granting summary judgment to ATF, the district court found there was "substantial evidence to support Respondent's finding that Petitioner willfully committed 'hundreds of . . . violations . . . after a history of previous violations.'"

---

If after a hearing . . . the Attorney General decides not to reverse his decision to deny an application or revoke a license . . . . [t]he aggrieved party may at any time within sixty days after the date notice was given under this paragraph file a petition with the United States district court for the district in which he resides or has his principal place of business for a de novo judicial review of such denial or revocation.

(J.A. 54 (alteration in original).) "Revocation," the court continued, "was not only 'authorized' but well justified where Petitioners continued to commit hundreds of violations of the GCA after repeated warnings about the unlawfulness of the licensee's prior noncompliance." (*Id.*)

After the district court denied Gilbert's Motion to Alter Judgment, he timely appealed to this court. In his appeal, Gilbert challenges the district court's finding that his violations of the GCA were willful and he questions the lawfulness of several of the regulations which he was found to have violated.

## II.

"The Attorney General may, after notice and opportunity for hearing, revoke any license issued [pursuant to 18 U.S.C. § 923] if the holder of such license has willfully violated any provision of [the GCA] or any rule or regulation prescribed by the Attorney General under [the GCA] . . . ." 18 U.S.C. § 923(e) (2006); *see also* 27 C.F.R. § 478.73(a) (2008) ("Whenever the [ATF] Director of Industry Operations has reason to believe that a licensee has willfully violated any provision of the [GCA] . . . a notice of revocation of the license . . . may be issued.").[5] A federal court reviewing such a revocation may grant summary judgment "if no genuine issue of material fact exists about whether [the licensee] willfully violated an applicable statutory or regulatory provision." *Armalite, Inc. v. Lambert*, 544 F.3d 644, 647 (6th Cir. 2008). We review a district court's grant of summary judgment de novo. *Blaustein & Reich, Inc. v. Buckles*, 365 F.3d 281, 286 (4th Cir. 2004).

In determining whether a genuine issue of material fact exists, we must view the evidence in the light most favorable

---

[5]The Attorney General has delegated his licensing authority to the Director of ATF. 28 C.F.R. § 0.130(a)(1) (2008).

to the nonmoving party. *Id.* at 286. However, a nonmovant cannot defeat summary judgment with merely a scintilla of evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). "If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Id.* at 249-50 (internal citations omitted).

## III.

Gilbert first argues that in granting summary judgment, the district court applied an erroneous interpretation of the word "willfully" to find that Gilbert had "willfully violated" the GCA. Gilbert contends that the district court improperly relied on the interpretation of "willfully" used in *RSM, Inc. v. Herbert*, 466 F.3d 316 (4th Cir. 2006). According to Gilbert, *RSM*'s interpretation is in conflict with that found in this Court's earlier decision in *Prino v. Simon*, 606 F.2d 449 (4th Cir. 1979) (per curiam), and with the Supreme Court's decision in *Safeco Insurance Co. of America v. Burr*, 551 U.S. 47, 127 S. Ct. 2201 (2007).

Gilbert is correct that, to the extent there is a conflict between *RSM* and *Prino*, we are bound to follow *Prino*'s interpretation. *McMellon v. United States*, 387 F.3d 329, 333 (4th Cir. 2004) (en banc). And, of course, the Supreme Court's interpretation of the term would supersede both *RSM*'s and *Prino*'s. However, we fail to find the irreconcilable conflict between these three opinions that Gilbert suggests.

In *Prino*, this Court interpreted the term "willfully" as used in 18 U.S.C. § 923(d)(1)(C), which permits the denial of a firearms license application where the applicant has willfully violated any provision of the GCA or its regulations. *Prino*, 606 F.2d at 450. We articulated the standard for willfulness as follows:

> "'Willful' means action taken knowledgeably by one subject to the statutory provisions in disregard of the

action's legality. No showing of malicious intent is necessary. A conscious, intentional, deliberate, voluntary decision properly is described as willful, 'regardless of venal motive.'"

*Id.* (quoting *Intercounty Constr. Co. v. Occupational Safety & Health Review Comm'n.*, 522 F.2d 777, 779-80 (4th Cir. 1975)).

Years later, in *RSM*, this Court interpreted the term "willfully" as used in 18 U.S.C. § 923(e). 466 F.3d at 317. We decided that, although this statute imposed only civil liability, we should interpret its use of the term "willfully" in accordance with that found in its criminal counterpart.[6] *Id.* at 321 n.1. Taking this approach, we found that a defendant does not need to have "knowledge of the law which he is accused of violating" to have acted "willfully" for purposes of § 923(e). *Id.* at 321 (emphasis omitted). "Rather, a more general knowledge 'that the conduct is unlawful is all that is required.'" *Id.* (quoting *Bryan v. United States*, 524 U.S. 184, 196 (1998)). Moreover, we recognized that the willfulness requirement could be satisfied by showing "a disregard of or an indifference to known legal obligations." *Id.* "Thus when determining the willfulness of conduct, we must determine whether the acts were committed in deliberate disregard of, or with plain indifference toward, either known legal obligations or the general unlawfulness of the actions." *Id.* at 321-22.

Gilbert now suggests that *Prino* and *RSM* are in irreconcilable conflict because he believes that *RSM*'s interpretation could extend "willfully" to apply to more than the "conscious,

---

[6]Section 924(a)(1)(D) of Title 18 of the U.S. Code provides for criminal penalties for anyone who "willfully violates" the provisions of the GCA. The word "willfully" was introduced into both § 924(a)(1)(D) and § 923(e) at the same time, through the enactment of the Firearm Owners' Protection Act of 1986, and, in *RSM*, "we presume[d] that Congress intended the same word used multiple times in a single act to carry a consistent meaning." 466 F.3d at 321 n.1.

intentional, deliberate, and voluntary" action to which *Prino* was directed.**[7]** In his view, *Prino*'s definition would protect a licensee's conduct in situations where he was aware of the law generally but did not act intentionally or deliberately to violate the law, while *RSM*'s definition would not. Whatever potential conflicts could manifest between these two standards, however, we are confident that they do not present in this case.

Although *Prino* and *RSM* articulate the "willfulness" standard for § 923 a little differently, both hold that malice or improper motive is not necessary to establish willfulness. *Compare Prino*, 606 F.2d at 451 ("No showing of malicious intent is necessary. A conscious, intentional, deliberate, voluntary decision properly is described as willful, regardless of venal motive." (internal citation and quotation marks omitted)) *with RSM*, 466 F.3d at 321 (noting that *Bryan* specifically rejected a construction of "willfully" that would require "a showing of 'bad purpose'"). Both cases also recognize that "deliberate disregard of, or . . . plain indifference toward . . . known legal obligations" is enough to constitute "willfulness." *RSM*, 466 F.3d at 321. While *RSM* does this explicitly, in *Prino* it is implicit: looking at the context of the case, it is clear that the *Prino* standard was meant to cover such conduct.

In *Prino*, the licensee, who had been dealing in firearms since 1954, was cited in a 1975 inspection for a number of recordkeeping violations, as well as three illegal sales of handguns to out-of-state residents. 606 F.2d at 450. He received a warning letter from ATF's Regional Director

---

**[7]**We note briefly that *Prino* and *RSM* interpret different sections of 18 U.S.C. § 923. *Prino* deals with § 923(d)(1)(C) (approval of application for a firearms license) while *RSM* looks at § 923(e) (revocation of a firearms license). That said, the two uses should be read to have a consistent meaning. *See Ratzlaf v. United States*, 510 U.S. 135, 143 (1994) ("A term appearing in several places in a statutory text is generally read the same way each time it appears.").

ordering immediate compliance and warning that if further violations were found in an inspection scheduled for sixty days later, his license would be revoked. *Id.* At the re-inspection, a number of violations were found again, some of them being of the same type as those found in the first inspection. *Id.* On the basis of that re-inspection, Prino's application for a license renewal was denied, and that decision was affirmed after an ATF hearing. *Id.* In his appeal to the district court, Prino submitted affidavits that "tended generally to explain as inadvertent, or to show mitigating circumstances, or to refute particular ones of the last violations found, but the fact that some of the violations cited on all three inspections had indeed occurred was not disputed."[8] *Id.* at 451. Thus, much like this case, the *Prino* licensee's main defense was that his violations were inadvertent and therefore not willful. The *Prino* Court rejected this argument, agreeing with the district court that the evidence showing Prino's continued non-compliance after warnings from ATF sufficed to establish "willfulness." *Id.* at 451.

Similarly, in *RSM*, licensee Valley Gun had its license revoked after being cited for numerous violations of the GCA and after being given "an extended opportunity to place [its] operations in compliance." 466 F.3d at 317 (internal quotation marks omitted). Valley Gun was first cited in 1997 for improper maintenance of its ATF Form 4473s, improper maintenance of its A&D Records, and having forty-five firearms missing from its inventory. *Id.* at 317-18. ATF issued a warning letter as a result of these violations that stated, "Repeat violations of those listed above will be viewed as willful, and may result in the revocation of your license." *Id.* at 319 (internal quotation marks omitted). Over the next six years, ATF conducted three more inspections, finding increasing numbers of violations. *Id.* Despite the fact that each of these

---

[8]A third compliance inspection was held by order of the district court, and a number of additional record-keeping violations were found. *Prino*, 606 F.2d at 450.

inspections was followed by a warning letter and that ATF held at least two warning conferences with the licensee, many of the violations found were repeat violations. *Id.* Ultimately a notice of revocation was issued to Valley Gun. *Id.*

In contesting revocation, Valley Gun did not dispute the violations themselves but claimed that it was not aware of some of the applicable regulations and that the recordkeeping violations were simply the result of "human error" and not willful. *Id.* at 319 (internal quotation marks omitted). While we rejected this argument in Valley Gun's case, we nonetheless acknowledged that there was a measure of normal human error in terms of GCA compliance that would fall below willfulness:

> To be sure, a single, or even a few, inadvertent errors in failing to complete forms may not amount to "willful" failures, even when the legal requirement to complete the forms was known. Yet *at some point*, when such errors continue or even increase in the face of repeated warnings given by enforcement officials, accompanied by explanations of the severity of the failures, one may infer as a matter of law that the licensee simply does not care about the legal requirements. *At that point*, the failures show the licensee's plain indifference and therefore become willful.

*Id.* at 322.

The facts and outcomes of *Prino* and *RSM* are almost identical. Both cases stand for the proposition that, where a licensee receives official warning that his actions violate the GCA and his record of compliance does not change (or, in these cases, gets worse), it is permissible to infer "willfulness." *RSM*, in fact, serves to explain *Prino*'s result: at some point, when a licensee shows a continued failure to avoid errors about which it has already been warned that conduct amounts to a willful violation, whether we describe it as "de-

liberate disregard" or, as *Prino* terms it, "[a] conscious, intentional, deliberate, voluntary decision," 606 F.2d at 451 (internal citation and quotation marks omitted). It therefore is clear that both standards, whatever their technical differences, are intended to cover the same kind of conduct, and are not irreconcilably conflicted.[9]

The decision in *RSM* also does not conflict with the Supreme Court's decision in *Safeco* in any way that would have significance for this case. In *Safeco*, the Supreme Court considered the meaning of the "willfulness" requirement in the Fair Credit Reporting Act's ("FCRA") provision creating a private right of action for consumers.[10] 551 U.S. at __, 127 S. Ct. at 2205. Petitioner insurance companies tried to argue that "willfulness" in this context applied only to knowing violations of the FCRA, and not to "reckless disregard" of statutory obligations, but the Court disagreed. *Safeco*, 551 U.S. at __, 127 S. Ct. at 2208. The Court noted that "where willfulness is a statutory condition of civil liability, we have generally taken it to cover not only knowing violations of a standard, but reckless ones as well." *Id.* This decision is completely in accord with our decisions in *Prino* and *RSM*.

Gilbert seems anxious to remind this Court that "willfulness" does not extend to "inadvertent errors or technical mistakes." (Appellants' Br. 20.) But *RSM* (and *Prino* and *Safeco*) would agree with that. In *RSM*, we noted that "a single, or even a few, inadvertent errors" would not amount to a "willful" violation. *RSM*, 466 F.3d at 322. At some point, however, a repeated failure to comply with known regulations can

---

[9]In fact, it seems strange that Gilbert presses us so strenuously to follow the *Prino* standard, when the violations in *Prino* were even less egregious and protracted than those found in *RSM*.

[10]The provision allowed a consumer to bring suit against "[a]nyone who 'willfully fails' to provide notice [of any adverse action based on a credit report] to the consumer." *Safeco*, 127 S. Ct. at 2205 (quoting 15 U.S.C. § 1681n(a)).

move a licensee's conduct from inadvertent neglect into reck-
less or deliberate disregard (and thus willfulness), as in *RSM*,
where the "number and seriousness [of violations] . . . in the
face of repeated warnings undoubtedly satisf[ied] the willful-
ness requirement."[11] *Id.*

We find no irreconcilable conflict between the willfulness
standard articulated in *RSM* and those found in *Prino* and
*Safeco*. Moreover, even to the extent that there are distinc-
tions in statutory interpretation to be parsed here, the facts of
this case certainly do not require us to resolve them. As we
discuss below, under *RSM*, *Prino, and Safeco*, Gilbert's con-
duct clearly satisfies the willfulness requirement of § 923(e).

IV.

As the district court noted, "[a]lthough Petitioners contest
the factual basis of some of the violations, the government's
burden does not require that the court sustain every violation
in order to uphold the revocation." (J.A. 49.) In fact, a single
uncontested violation suffices to uphold the ATF's revocation
decision. *Armalite*, 544 F.3d at 649. Because we find that Gil-

---

[11]The standard outlined in *RSM* is also consistent with those articulated
by our sister circuits who have considered the issue. *See Armalite*, 544
F.3d at 648, 650 (finding that § 923(e)'s "willfulness" requirement does
not extend to negligent violations of the GCA but noting that "[a]t some
point, repeated negligence becomes recklessness"); *Willingham Sports,
Inc., v. ATF*, 415 F.3d 1274, 1277 (11th Cir. 2005) ("[A] showing of pur-
poseful disregard of or plain indifference to the laws and regulations
imposed on firearms dealers shows willfulness for purposes of
§ 923(d)(1)(C)."); *Perri v. Dep't of the Treasury*, 637 F.2d 1332, 1336
(9th Cir. 1981) (defining a "willful violation" of the GCA as occurring
"when a dealer understands the requirements of the law, but knowingly
fails to follow them or was indifferent to them"); *Stein's Inc. v. Blumen-
thal*, 649 F.2d 463, 467 (7th Cir. 1980) (noting that the government "need
only prove that the petitioner knew of his legal obligation and purpose-
fully disregarded or was plainly indifferent to the recordkeeping require-
ments" (internal citation and quotation marks omitted)); *Lewin v.
Blumenthal*, 590 F.2d 268, 269 (8th Cir. 1979) (same).

bert raises no genuine issue of material fact with respect to a number of the violations for which he was cited in the 2003 inspection, we agree with the district court that summary judgment was appropriate.[12]

The quantum and variety of violations which the 2003 inspection revealed are staggering, and we will not attempt (and do not need) to address all of them. For purposes of illustration, however, we discuss one example of a category of uncontested violations that clearly demonstrates Gilbert's plain indifference to and deliberate disregard for the GCA regulations.[13]

The 2003 inspection showed 427 missing disposition entries in the A&D Records. Gilbert acknowledges the factual basis for 421 of those. He then explains that some 275 of those were recorded elsewhere or "merely late." (Appellants' Br. 27.) He further claims that because he has now reported the remaining 146 firearms as lost or stolen, he does not need

---

[12]Gilbert has argued that the district court erred in granting summary judgment on the basis of the administrative record. However, an administrative record is a duly authenticated record that enjoys a presumption of verity. *Langston v. Johnson*, 478 F.2d 915, 917-18 (D.C. Cir. 1973). In an appeal of agency action, "[t]hat record, unless somehow contradicted, satisfie[s] the [agency's] initial burden of demonstrating the absence of any genuine issue of [material] fact." *Id.* at 918 n.17. Of course, a district court can consider evidence submitted by the parties outside the administrative record in determining whether summary judgment is appropriate. *DiMartino v. Buckles*, 129 F. Supp. 2d 824, 827 (D. Md. 2001), *aff'd*, 19 Fed. Appx. 114 (4th Cir. 2001). Here, the only outside evidence offered by Gilbert was his own affidavit. The district court properly considered that evidence and found that, at best, it contradicted the factual basis for only "*some* of the violations" documented in the administrative record. (J.A. 49 (emphasis added).)

[13]Having found that ATF has met its burden of showing that there are no genuine issues of material fact with respect to at least one category of violations, we need go no further to decide that the district court's entry of summary judgment in favor of ATF was appropriate. Therefore, we decline to address the merits of Gilbert's legal challenges to various other categories of violations.

to record them in the A&D Records. These post-hoc explanations are unavailing. The fact remains that at the time of the 2003 inspection, it is undisputed that at least 421 disposition entries were missing and, of these, at least 146 entries were missing because the firearms had been lost or stolen without Gilbert even being aware of it. Gilbert's remedial efforts after the violations were discovered do not compensate for the fact that there was a violation in the first place. *See Armalite*, 544 F.3d at 646 (impliedly rejecting licensee's argument that certain mistakes in its A&D Records were "'self-healing' in that any inconsistencies later became apparent and were easily corrected"). In fact, it seems likely that none of these violations would have been corrected—and most disturbingly, that there would have been no record of the 146 lost or stolen firearms—had it not been for the inspection. Furthermore, Gilbert had already been warned about this specific kind of violation in the past (in 1987, when ATF cited him for failing to record seven missing firearms in the A&D Records), not to mention the fact that ATF inspectors had held an individual review of the regulations with him at least twice.

Gilbert suggests that his "proper recordation of tens of thousands of firearms over 20 years shows" that his violations were not deliberate or reckless. (Appellants' Br. 30 (emphasis omitted).) We found unconvincing a similar argument made by the licensee in *RSM*. *See RSM*, 466 F.3d at 320. Plain indifference can be found even where nine times out of ten a licensee acts in accordance with the regulations, if he was plainly indifferent to the one-in-ten violation. Gilbert received repeated warnings regarding this precise type of violation from the ATF, and ATF officials even met with him twice to review the regulations and make sure that he understood what was required in order to be in compliance. Despite these efforts, Gilbert and his staff continued to make the same "clerical errors" not just in a few isolated circumstances, but at least 421 times. Whether we term this "plain indifference," "deliberate disregard," "reckless disregard," or a "conscious, intentional, deliberate, and voluntary action" is of little conse-

quence. Gilbert displayed a lack of concern for the regulations that clearly meets the standard of willfulness.

In *RSM*, this Court underscored "the need for strict compliance with the Gun Control Act." *RSM*, 466 F.3d at 323. However onerous the GCA's regulatory regime for federal firearms dealers may seem, violations create a very real potential for dangerous consequences: "When a firearms dealer cannot account for guns or fails to ensure that guns are sold to authorized persons, the public safety is directly and meaningfully implicated." *Id.* at 324. The standard of willfulness laid out in *RSM* and *Prino* does not demand perfection from licensees—it leaves room for the occasional incident of human error. In the more than twenty years that Gilbert has been in business, however, he has shown a profound indifference to the ATF's numerous efforts to bring him into compliance—the 2003 inspection revealed a level of violations that dwarfed those found in previous inspections. The string of prior citations, warning letters, and regulatory review sessions were clearly not enough to bring Gilbert into compliance. We have no trouble finding in these circumstances that Gilbert's violations of the GCA were willful.

The judgment of the district court is hereby affirmed.

*AFFIRMED*