**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

————————————

**No. 10-2396**

————————————

MELINDA RIDDICK,

                Plaintiff - Appellant,

      v.

MAIC, INCORPORATED,

                Defendant - Appellee.

————————————

Appeal from the United States District Court for the District of
Maryland, at Greenbelt. Jillyn K. Schulze, Magistrate Judge.
(8:09-cv-00033-JKS)

————————————

Submitted: July 21, 2011        Decided: August 31, 2011

————————————

Before KING, GREGORY, and DIAZ, Circuit Judges.

————————————

Affirmed by unpublished per curiam opinion.

————————————

Brian M. Maul, GORDON & SIMMONS, LLC, Frederick, Maryland, for
Appellant. Mindy G. Farber, Edward C. Schweitzer, Jr., FARBER
LEGAL, LLC, Bethesda, Maryland, for Appellee.

————————————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

This Title VII case is about discrimination based on pregnancy and whether the plaintiff, Melinda Riddick, has satisfied her prima facie burden to prove she met the employer's legitimate expectations. Because the uncontested evidence suggests that Riddick failed to meet these expectations, and indeed was criticized by seven out of eight of the employees she managed, we conclude that she has failed to satisfy this element under the McDonnell Douglas framework and therefore affirm the judgment of the magistrate, acting as the district court.

I.

The following facts are presented in the light most favorable to Riddick, the nonmovant. Unless otherwise noted, they are uncontested. Riddick worked for MAIC, a minority-female owned federal government contractor, as a Program Manager. In that capacity, she oversaw a team of employees who worked on a contract with Immigration and Customs Enforcement (ICE). She started work on October 15, 2007, to the tune of a six figure salary. At the time, she had one eleven-year-old child and was of childbearing age. Over the course of her first three months of employment, MAIC did not bill her because she had not yet received official clearance. She was not doing full time work, yet was being paid salary.

2

Riddick received no performance evaluations during this time, or indeed at any time during her tenure at MAIC. Nevertheless, in April 2008 internal emails exchanged within the company indicate that a part-owner, though not direct supervisor of Riddick's, Bob Weiss, was dissatisfied with her performance. According to the emails, the two had a heated verbal exchange pertaining to the contract's administration. Nevertheless, the emails also contained encouraging phrases such as "keep up the good work" and "I think you are really on the right track." Furthermore, the client praised Riddick's performance in a meeting, saying that she thought Riddick was doing a "great job." Weiss added in this email that the client was correct. However, there were also negative indicators. Rita Henderson, the company's president, noted that writing was "challenging" for Riddick and that she needed to proofread her work more thoroughly. Weiss sent several emails noting his concerns with her performance that were circulated among upper management.

Then in May 2008, Riddick informed MAIC that she was pregnant. Because she suffered from internal bleeding, which could potentially harm her or the fetus, her doctor ordered her to have four weeks of bed rest. Because she had been employed for less than a year, she was not eligible for the Family Medical Leave Act coverage, so she took unpaid leave. Perhaps as a result of the uncertainty generated by the emails

3

referenced above, Riddick sought reassurance from MAIC that they would not terminate her. Accordingly, MAIC inserted language in her voluntary leave letter stating that her position was secure. While she was gone, various problems in her work emerged that had not been obvious when she was present. Riddick herself called attention to one of them: hundreds of entries in the contract database were duplicates and thus could not be processed. She blamed this on the Information Technology (IT) worker responsible for the database maintenance. However, it is uncontested that after Riddick temporarily left, her subordinates began to complain about her management style, claiming she played favorites, that she was difficult to get along with, and that she left some of them without work for weeks. Even her "favorite," who tutored Riddick's daughter in math, claimed Riddick had unfairly assigned cubicles. Riddick does not dispute the substance of the allegations, but claims instead that because the form of the affidavits appears strikingly similar, they must be the product of coercion from MAIC.

Notwithstanding the assurances MAIC had given, the day Riddick returned from bedrest, her employer terminated her. In the termination meeting, Riddick claims the company told her that her firing was not "performance related." Henderson, however, insists that Riddick was not given a reason at the

meeting, which lasted under three minutes and that Henderson merely said the company had decided the two should part ways. Riddick was presented with a severance package that only included healthcare through September – even though she was due in December – and that required her to waive her Title VII rights against MAIC. Riddick consulted a lawyer the same day. This suit ensued. After discovery, MAIC moved for summary judgment in front of a magistrate judge. The magistrate judge granted the company's motion. This appeal followed.[*]

## II.

This case comes before us on a motion for summary judgment. A party is entitled to summary judgment if it "shows that there is no genuine dispute as to any material fact" and that it "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). To resist

---

[*] Importantly, we note that as part of the Joint Appendix, Riddick has not submitted the deposition testimony of any of the seven affiants who were her subordinates. Rather, the testimony that she was a difficult manager is contested on the basis of credibility alone.

summary judgment, a nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), and the party "cannot defeat summary judgment with merely a scintilla of evidence," Am. Arms Int'l v. Herbert, 563 F.3d 78, 82 (4th Cir. 2009).

## III.

Under a Title VII framework, which comes under the auspices of gender discrimination, a plaintiff must satisfy a four part test:  "(1) she is a member of a protected class; (2) she suffered adverse employment action; (3) she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class."  Hill v. Lockheed Martin Logistics Mgmt., 354 F.3d 277, 285 (4th Cir. 2004).  See also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 807 (1973).  If the employee is able to satisfy this requirement, the burden of production then shifts to the employer to show a legitimate, nondiscriminatory reason for the adverse employment action.  Hill, 354 F.3d at 285.  If the employer does so, then the burden shifts back to the plaintiff to show by a preponderance of evidence that the employer's

reasons were not his or her true reasons, but a pretext for discrimination. Id.

Here, Riddick is unable to show that the stated reason proffered by her employer – her deficient performance – was a pretext for discrimination, and thus fails the third prong of the McDonnell Douglas test. The only evidence she points to is speculation by her "favorite" subordinate that the termination was pregnancy related and the suspicious timing. Yet these facts are insufficient to overcome by a preponderance of evidence the uncontested affidavits of her subordinates that she was a difficult supervisor. If she wished to test the credibility of these affidavits, she could have taken the depositions of the employees. Further, the company's uncontroverted internal emails show that there were performance issues predating the revelation of Riddick's pregnancy, showing the company did have legitimate concerns about her ability to perform. Thus, we conclude that Riddick was properly terminated because she has not shown that the legitimate reasons given by the employer were pretextual by a preponderance of the evidence.

We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

7

For the foregoing reasons, the judgment of the magistrate judge is

AFFIRMED.