**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-3718
_____

JOHN F. SIMPSON, t/a Warrior Ridge Trading; t/a LCT Pro Shop

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA;
DIRECTOR, BUREAU OF ALCOHOL, TOBACCO, FIREARMS
& EXPLOSIVES; DIRECTOR OF INDUSTRY OPERATIONS,
BUREAU OF ALCOHOL, TOBACCO, FIREARMS &
EXPLOSIVES; UNITED STATES OF AMERICA

John F. Simpson,
            Appellant


_____


On Appeal from the United States District Court
for the Middle District of Pennsylvania
District Judge: Honorable John E. Jones, III
(D.C. Civil No. 1-15-mc-00297)
_____

Argued October 30, 2018
_____

Before: CHAGARES, JORDAN, and VANASKIE*, *Circuit Judges*

(Opinion Filed: January 3, 2019)

Adam J. Kraut
Joshua Prince        [ARGUED]
Prince Law Offices
646 Lenape Road
Bechtelsville, PA 19505
        *Counsel for Appellant*

David J. Freed
United States Attorney
Carlo D. Marchioli   [ARGUED]
Kate L. Mershimer
Office of United States Attorney
228 Walnut Street, P.O. Box 11754
220 Federal Building and Courthouse
Harrisburg, PA 17108

Jeffrey A. Cohen
ATF Associate Chief Counsel
John Kevin White
ATF Division Counsel
601 Walnut Street, Suite 1000E
Philadelphia, PA 19106
        *Counsel for Appellees*

---

* The Honorable Judge Vanaskie transmitted the opinion to the Clerk for filing prior to retiring from the bench on January 1, 2019. Due to the intervening holiday, the opinion has been entered on the docket by the Clerk this day.

_____

OPINION
_____

VANASKIE, *Circuit Judge*.

Appellant John Simpson appeals the District Court's order granting summary judgment for Appellees and affirming the Bureau of Alcohol, Tobacco, Firearms & Explosives' ("ATF") revocation of his federal firearms licenses ("FFLs"). After an annual compliance investigation, the ATF determined that Simpson had committed over 400 willful violations of the Gun Control Act of 1968, 18 U.S.C. § 921 *et seq.* ("GCA"), and therefore revoked his FFLs pursuant to 18 U.S.C. § 923(e) and 27 C.F.R. § 478.73. After an administrative hearing, the ATF affirmed its revocation decision and Simpson filed a petition for judicial review under 18 U.S.C. § 923(f)(3). The District Court, adopting a Magistrate Judge's report and recommendation, granted summary judgment in favor of the ATF. For the following reasons, we will affirm.

Simpson's appeal presents us with the question of what standard to apply to determine whether a violation of the GCA was willful, an issue we have not yet addressed in a precedential opinion. In a non-precedential opinion, we found persuasive the willfulness standard used by seven other circuits: knowledge of a legal obligation and purposeful disregard or plain indifference to it. *Taylor v. Hughes*, 548 F. App'x 822, 824 (3d Cir. 2013) (citing *Borchardt Rifle Corp. v. Cook*, 684 F.3d 1037, 1042 n.9 (10th Cir. 2012) (listing cases)). Agreeing with the unanimous view of all the Courts of Appeals to have addressed this issue, we now hold in this precedential

3

opinion that this willfulness standard applies to violations of the GCA. Because it is clear that Simpson knew of and was plainly indifferent to his obligations by committing hundreds of GCA violations, we will affirm the District Court's ruling.

I.

Simpson applied for a dealer's FFL in 2010, which prompted an ATF interview. During the interview, ATF representatives discussed Simpson's legal responsibilities and obligations as a firearms dealer, covering topics such as acquisition and disposition ("A&D") recordkeeping, sales to law enforcement, out-of-state gun sales, prohibited sales, consignment of firearms, and personal firearms. At the end of the meeting, Simpson signed an Acknowledgement of Federal Firearms Regulations, certifying that he understood his responsibility to learn and follow all laws and regulations governing his FFL. Simpson subsequently received an FFL and opened a firearms store, Warrior Ridge Trading

In 2011, Simpson attended a seminar for FFL holders, where ATF officials discussed federal firearms regulations and showed sample Firearms Transaction Records. In 2012, after consulting with the ATF about his desire to assemble AR-15 rifles, Simpson applied for an additional FFL to manufacture firearms. ATF officials met with him and discussed the legal responsibilities associated with a manufacturer's license, including the duty to mark all manufactured firearms and to keep a separate manufacturing A&D book. Simpson again signed an acknowledgement form certifying that he understood his legal obligations under his additional FFL.

In February 2014, Simpson applied to relocate his FFLs because he planned to move his firearms store to another

4

location.  An ATF Industry Operations Inspector ("IOI") met with him and discussed his application.  Simpson once again signed a form acknowledging that he understood his responsibilities and obligations under the GCA.

In April 2014, ATF conducted a compliance inspection of Simpson's FFLs pursuant to 18 U.S.C. § 923(g)(1)(C).  **]** According to IOI Susan Whitman, this inspection "was the worst [she] ever conducted," and, based upon her report, the ATF decided to revoke Simpson's FFLs.  (App. I 7).  Simpson requested a review of the revocation decision pursuant to 18 U.S.C. § 923(f)(2) and 27 C.F.R. § 478.74.  After a hearing, ATF Director of Industry Operations ("DIO") Juan Orellana found that Simpson had committed over 400 willful violations of the GCA.  As summarized by the Magistrate Judge, these violations include:

> [S]elling or delivering multiple firearms without having completed Firearm Transaction Records, ATF Forms 4473, and without Simpson making the required entries in his [A&D] Book; transferring firearms without conducting background checks; dealing firearms at the Alexandria Sportsman's Club and in West Virginia without obtaining a license to do so; selling or delivering firearms, firearm frames, or firearm receivers in seven instances to individuals who did not live in Pennsylvania; incorrectly identifying in multiple

5

instances the firearms that had been transferred; failing to identify and mark 14 firearms that he manufactured, and failing to make the required records for those manufactured firearms; failing to record the disposition of five firearms to other licensees; failing to record the record of disposition of 30 firearms to non-licensees; failing on over 70 occasions to record required information in his A&D Book; failing in approximately 200 instances to record information on ATF Forms 4473; failing to appropriately sign and date ATF Form 4473 in dozens of cases to indicate that he did not have reasonable cause to believe that a transferee was disqualified from receiving a firearm; and failing to submit an Annual Firearms Manufacturing and Exportation Report (ATF Form 5300.11) in 2012 and 2013.

(App. I 7-8; *see also* App. II 137-98). As such, the ATF issued final revocation notices to Simpson.

Simpson then filed a petition for judicial review and moved for an emergency stay of the revocation of his FFLs. The District Court denied his motion, finding that Simpson was unlikely to "succe[ed] on the merits, given the numerosity and types of violations," and because the court was not "persuaded

6

by [Simpson's] contention that he was inadequately trained by [the ATF]." (App. 9). The case was then referred to a Magistrate Judge for pretrial management. Upon completion of discovery, the parties filed cross-motions for summary judgment.

Addressing the cross-motions in a Report and Recommendation, the Magistrate Judge concluded that the ATF was authorized to revoke Simpson's FFLs because he had willfully committed over 400 violations of the GCA. (App. I 33-34). The District Court adopted the report and recommendation in its entirety, and thus granted summary judgment for the ATF and affirmed its revocation of Simpson's FFLs. Simpson's timely appeal followed.

II.

The District Court had jurisdiction to review the ATF's revocation decision under 18 U.S.C. § 923(f), 5 U.S.C. § 702, and 28 U.S.C. § 1331. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291. We exercise *de novo* review over the District Court's grant of summary judgment. *See, e.g.*, *Kelly v. Borough of Carlisle*, 622 F.3d 248, 253 (3d Cir. 2010). A grant of summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Further, an administrative record "enjoys a presumption of veracity" at summary judgment. *Am. Arms Int'l v. Herbert*, 563 F.3d 78, 86 n.12 (4th Cir. 2009) (citation omitted).

III.

Under the GCA, the ATF may revoke an FFL if the license holder willfully violated any provision of the GCA or any rule or regulation prescribed under the GCA. 18 U.S.C. § 923(e); *see also* 27 C.F.R. § 478.73. "A single willful violation [of the GCA] authorizes the ATF to revoke the violator's FFL, regardless of how severe . . . ." *Fairmont Cash Mgmt., L.L.C. v. James*, 858 F.3d 356, 362 (5th Cir. 2017). Thus, in the GCA context, our review of the District Court's grant of summary judgment requires us to determine whether there was no genuine dispute as to any material fact establishing even one willful violation of the GCA. *See Am. Arms*, 563 F.3d at 86 (noting that "a single uncontested violation suffices to uphold" summary judgment for the ATF (citing *Armalite, Inc. v. Lambert*, 544 F.3d 644, 649 (6th Cir. 2008))).

Eight other Courts of Appeals have held that a violation of the GCA is willful where the licensee knew of his legal obligation and purposefully disregarded or was plainly indifferent to the requirements. *See Borchardt Rifle*, 684 F.3d at 1042; *Fairmont Cash Mgmt.*, 858 F.3d at 362; *Armalite*, 544 F.3d at 647; *RSM, Inc. v. Herbert*, 466 F.3d 316, 317 (4th Cir. 2006); *Article II Gun Shop, Inc. v. Gonzales*, 441 F.3d 492, 497 (7th Cir. 2006); *Willingham Sports, Inc. v. ATF*, 415 F.3d 1274, 1277 (11th Cir. 2005); *Perri v. ATF*, 637 F.2d 1332, 1336 (9th Cir. 1981); *Lewin v. Blumenthal*, 590 F.2d 268, 269 (8th Cir. 1979). We find this definition of willfulness to be appropriate. Indeed, this standard mirrors the willfulness standard we have applied in the parallel context of ATF revocations of fireworks and explosives licenses for violations of federal explosives laws. *See Vineland Fireworks Co. v. ATF*, 544 F.3d 509, 517–19 (upholding the ATF's interpretation of willful because it

was reasonable).[1]    In *Vineland*, we upheld that willfulness "do[es] not require a bad purpose," or an intent to disobey the law, but rather willfulness can be established by a mere "violation of the regulations with knowledge of their requirements." *Id.* Moreover, both parties in this case agree with this willfulness standard. Accordingly, we now join our sister circuits in holding that a violation of the GCA is willful where the licensee: (1) knew of his legal obligation under the GCA, and (2) either purposefully disregarded or was plainly indifferent to GCA requirements.

Here, Simpson has been charged with willfully violating the GCA over 400 times. He contends that he did not fully understand his obligations and that any violations he committed were not willful, but due to mistake or ignorance. We disagree, as the record indicates that Simpson was well apprised of his duties under the GCA but continually violated GCA recordkeeping, manufacturing, and sales requirements.

---

[1] In *Vineland*, we deferred to the ATF's interpretation of willfulness under federal explosives law because we found it reasonable. *See Vineland*, 544 F.3d at 518 n.17. Our review of explosives licensing decisions is governed only by 5 U.S.C. § 706, so we apply *Chevron* deference to reasonable agency decisions. *See* 18 U.S.C. § 843(e)(2); *see also Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984). In contrast, the GCA explicitly tasks courts with conducting *de novo* review of ATF licensing denials or revocations. *See* 18 U.S.C. § 923(f)(3). As such, we review district court decisions regarding ATF firearms licensing *de novo. See, e.g.*, *Willingham Sports*, 415 F.3d at 1275-76.

9

A.

The record shows that Simpson was informed of his obligations as an FFL licensee. For example, Simpson met with ATF officials three times about his FFLs and, at the conclusion of each meeting, he signed a form acknowledging that he discussed various regulatory topics with the ATF. In addition, Simpson attended an ATF seminar for FFL holders where he learned more about his obligations under the GCA.

The record also demonstrates that Simpson often complied with GCA requirements. On numerous occasions, Simpson lawfully sold firearms and fully completed the A&D recordkeeping required under the GCA. Also, he applied to relocate his FFL, demonstrating that he knew that he was only allowed to sell firearms from his approved FFL location. His full compliance with GCA requirements in some instances belies his assertion that he did not understand those requirements.

Further, some of Simpson's actions illustrate that he understood the GCA regulatory scheme quite well. For example, he sometimes transferred firearms from his FFL inventory to his personal collection, thereby taking advantage of a statutory loophole that allowed him to later sell the firearms at gun shows without conducting background checks. Such action is inconsistent with that of a person who does not understand the GCA regulatory scheme. Accordingly, we find that no reasonable fact-finder could disagree that Simpson knew and understood his GCA obligations as an FFL licensee.

B.

In this case, the ATF has alleged that Simpson was plainly indifferent to the GCA's requirements. We must therefore determine what constitutes plain indifference under the willfulness standard we have adopted.

Plain indifference is demonstrated by "a lack of concern for [GCA] regulations. . . ." *Am. Arms Int'l*, 563 F.3d at 87. A lack of concern may be shown by circumstantial evidence—such as repeated violations or a large quantity of violations. *See, e.g., Borchardt Rifle*, 684 F.3d at 1043–44; *Am. Arms Int'l*, 563 F.3d at 87; *On Target Sporting Goods, Inc. v. Att'y Gen.*, 472 F.3d 572, 575 (8th Cir. 2007); *RSM, Inc.*, 466 F.3d at 322; *Willingham Sports*, 415 F.3d at 1277.

The ATF charged Simpson with willfully violating a long list of separate provisions of the GCA under his manufacturer's FFL, including, *inter alia*:

    (a) selling firearms without completing Form 4473s;
    (b) selling or delivering firearms without recording the disposition in his A&D book;
    (c) transferring firearms without conducting background checks;
    (d) dealing firearms outside of his FFL premises;
    (e) selling or delivering firearms to non-Pennsylvania residents;
    (f) transferring firearms and misidentifying corresponding A&D entries;
    (g) failing to identify and mark manufactured firearms;
    (h) failing to record the manufacture of firearms in his A&D book;

11

> (i) failing to record dispositions of firearms to FFL holders and non-licensees;
>
> (j) failing to complete all fields of Form 4473s; and
>
> (k) failing to sign and date Form 4473s.

(*See* App. I 8). Additionally, the ATF charged Simpson with willfully violating another series of provisions of the GCA under his dealer's FFL. These include, *inter alia*:

> (a) selling firearms without completing Form 4473s;
>
> (b) selling or delivering firearms without recording the disposition in his A&D book;
>
> (c) transferring firearms without conducting background checks;
>
> (d) selling firearms in West Virginia;
>
> (e) selling or delivering firearms to non-Pennsylvania residents
>
> (f) purchasing firearms without recording the purchases in his A&D book;
>
> (g) failing to complete all fields of Form 4473s; and
>
> (h) failing to sign and date Form 4473s.

*Id*.

Simpson contends that all of these violations either were mere mistakes or were due to his "fundamental misunderstanding as to the importance" of GCA recordkeeping requirements. (Appellant's Br. 35). However, in view of the fact that Simpson received training on his obligations and explicitly acknowledged that he understood his GCA obligations, the sheer number and continuing nature of the violations clearly demonstrate Simpson's plain indifference to the GCA's requirements.

12

While there is no dispute that Simpson violated the GCA on numerous occasions, there is also evidence of other firearms transactions in which Simpson fully complied with GCA requirements by completing, signing, and dating Form 4473s, recording the dispositions in his A&D book, and conducting background checks. This inconsistent conduct suggests both that Simpson knew of his obligations and was indifferent to complying with them. Moreover, there is evidence of blatant GCA violations. For example, Simpson routinely transferred receivers to out-of-state residents—in clear violation of the GCA—but falsely recorded the transfers as rifle sales in his A&D book, making these transactions appear lawful. Such behavior is indicative of Simpson's lack of concern for his GCA obligations as an FFL holder.

In sum, the record sufficiently shows that Simpson had knowledge of his FFL obligations, yet acted plainly indifferently to them, thus willfully violating the GCA. Accordingly, we find that the ATF was authorized to revoke Simpson's FFLs.

IV.

For the foregoing reasons we will affirm the District Court's grant of summary judgment in favor of the ATF, affirming its revocation of Simpson's FFLs.