**PRECEDENTIAL**


UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 18-1473
_____

HAY GROUP MANAGEMENT, INC.,

Appellant

v.

BERND SCHNEIDER

_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2-04-cv-01236)
District Judge: Honorable Harvey Bartle III

_____

Argued March 14, 2019

Before: MCKEE, ROTH, and FUENTES, Circuit Judges

(Opinion filed: July 10, 2020)

Jeremy D. Heep            (**ARGUED**)
Eli Segal
Benjamin J. Eichel
Alva C. Mather
Pepper Hamilton LLP
3000 Two Logan Square
18th and Arch Streets
Philadelphia, PA 19103

   Counsel for Appellant

John J. Barrett, Jr.
Reger Rizzo & Darnall LLP
2929 Arch Street,
Cira Centre, 13th Floor
Philadelphia, PA 19104

Karl Geercken            (**ARGUED**)
Alston & Bird
90 Park Avenue, 15th Floor
New York, NY 10016

   Counsel for Appellee

_____

OPINION

_____

ROTH, Circuit Judge

Hay Group Management, Inc., appeals the District Court's grant of summary judgment in which it held that Hay Group's claims are precluded by a final judgment issued by the German Higher Regional Court of Frankfurt am Main. The District Court assumed that the relevant inquiry was whether Hay could have brought its claims as counterclaims in the German litigation. But under Pennsylvania preclusion law, the correct question is whether Hay was required to bring its claims as counterclaims in the German litigation. Pursuant to Federal Rule of Civil Procedure 44.1, we have determined that under German law, Hay was not required to plead its claims in this action as counterclaims in the German litigation. We therefore hold that the District Court erred in granting summary judgment on the basis that Hay was precluded by German law from bringing this action. Since Hay's contract assignment claim seeks to functionally undo the German litigation, however, we will affirm the summary judgment on that claim, but we will reverse the District Court's grant of summary judgment on Hay's sham investigation claim and remand that claim to the District Court.

I

This matter arises out of Bernd Schneider's tenure and subsequent termination as CEO of all Hay Group companies.[1]

---

[1] There are numerous Hay entities, but for our purposes, three are relevant: Hay Group Management, Inc., (Hay USA); Hay BV, (Hay Netherlands); and Hay GmbH, (Hay Germany). The German litigation, at the time of final judgment, involved Hay Netherlands and Hay Germany. The District Court held that

Schneider, a longtime Hay employee, was elevated to CEO in 2001, succeeding Chris Matthews, who stayed on as Chairman of Hay Group.  Schneider's employment contract was signed with Hay Netherlands and allowed  Hay Netherlands to assign the contract to another Hay entity for tax purposes.

Schneider was unhappy with the bonus of $850,000 that he was awarded for 2002, his first full year as CEO.  He had an associate, Lucie Boller-Bockius, transfer funds for his bonus using an unusually favorable conversion rate which bumped the dollar value of the bonus up to $1,000,000, the amount that Schneider thought he deserved.  He also drastically increased Boller-Bockius's direct compensation and her severance package.  As a result, Schneider became involved in a protracted dispute with Stephen Kaye, the CFO of Hay Group.  Schneider was forced to return the excess bonus, but he then engaged a law firm to investigate Kaye.  When concerns about the aggressiveness of this investigation reached Matthews, he terminated the investigation on November 10, 2003, and retained another law firm to conduct an investigation.  This second investigation determined that the claims against Kaye were unfounded.  After these events, when Hay Group discovered that Boller-Bockius had left her job and was claiming an inflated pension, Hay Germany and Hay Netherlands terminated Schneider in late 2003 for "good cause."

---

Hay Group is in privity with Hay Netherlands; however, that holding was not appealed.  As a result, it is not necessary to further discuss the Hay entities' corporate structure in order to resolve this appeal.

4

As a result, Schneider sued Hay Germany and Hay Netherlands in the Labor Court of Germany, contesting his termination.[2] In 2005, on the basis that his contract had not been assigned to Hay Germany, Schneider brought a new action in the Netherlands, seeking a determination that Hay Netherlands violated Dutch law in firing him. The Dutch courts found that under Dutch law there had been no valid Hay Netherlands resolution, approving Schneider's termination. Schneider then returned to the German litigation, arguing that, because there had been no assignment, Dutch law applied to his firing. The German courts sought clarification from courts in the Netherlands regarding whether Schneider's contract had been validly assigned under Dutch law; the Dutch courts concluded that it had not been assigned. On September 19, 2012, the German trial court issued an opinion dismissing Schneider's claims and sustaining the Hay entities' sole counterclaim, which related to Boller-Bockius's compensation.

The German Higher Regional Court reversed in part on February 19, 2014. Unlike the lower court, the higher court gave preclusive effect to the Dutch court's finding that the contract had not been assigned. The German higher court relied on this failure to assign Schneider's contract to sustain many of his arguments on appeal. As a result, the Hay entities were required to pay Schneider over $13 million. While the investigation into Stephen Kaye was mentioned in the German

---

[2] Hay Group was initially a party to the suit, but it and other Hay entities were dismissed in 2010 for lack of international jurisdiction. The case was later transferred to the Regional Court of Frankfurt, which rendered the 2012 decision discussed below.

higher court's decision, the court explicitly declined to rely on it. Instead, the court focused its 122-page decision on Schneider's conduct surrounding Boller-Bockius's salary and pension.

Hay Group filed this suit on March 22, 2004, in the Eastern District of Pennsylvania, alleging nine causes of action with varying degrees of overlap with the German litigation. Because of the pendency of the German litigation, the District Court stayed this action in its entirety on April 28, 2005. After the German proceedings became final, the District Court lifted the stay on September 2, 2014, directed the filing of an amended complaint, and dismissed the claims against Boller-Bockius with prejudice. The second amended complaint, filed on June 7, 2016, is the operative pleading at this time.

The second amended complaint alleges two causes of action: first, that Schneider took numerous actions that breached his fiduciary and legal duty to the board, and, second, that Schneider conspired to defraud and harm Hay Group. These claims are based on allegations that Schneider (1) retained outside counsel and used the Hay entities' funds to try to remove Stephen Kaye; (2) initiated and controlled a sham investigation in concert with others, impeding an impartial review into the allegations against Kaye; (3) interfered with the contract assignment, which caused the Dutch and German courts to hold Schneider's termination was invalid under Dutch law; and (4) manipulated salaries and bonuses in order to entrench his power.

Schneider filed for summary judgment on April 28, 2017, arguing that (1) the contract assignment claims were

precluded,[3] (2) the remaining fiduciary duty claims were barred by the business judgment rule, and (3) the civil conspiracy claim could not survive without the other fiduciary duty claims. Hay Group, in response, contested preclusion and claimed that sufficient evidence existed to allow a jury to find that Schneider was operating in bad faith on both the fiduciary duty and conspiracy claims. Both parties submitted expert declarations of German law to the District Court.

The District Court granted summary judgment for Schneider. In dismissing each of the claims, the District Court relied entirely on the res judicata argument that Schneider had advanced exclusively with respect to the contract assignment, determining that it did not need to reach the other issues.

## II[4]

Hay Group raises two theories it believes are not precluded by the German litigation: the contract assignment claim and the claim relating to the investigation of Stephen

---

[3] Schneider provided six additional theories for dismissal of the contract assignment claim, but as we affirm the District Court's grant of summary judgment on this claim, we do not need to address them.

[4] The District Court had alienage jurisdiction under 28 U.S.C. § 1332(a)(2), as Hay Group is a Delaware corporation and Schneider is a citizen of Germany. We have jurisdiction pursuant to 28 U.S.C. § 1291. We review a grant of summary judgment de novo. *Simpson v. Att'y Gen.*, 913 F.3d 110, 113 (3d Cir. 2019).

Kaye.[5]  Schneider counters that these claims arise out of the same cause of action and are thus precluded.  Since this case arises under alienage jurisdiction, we must determine whether these claims are precluded under Pennsylvania law.[6]

Pennsylvania intermediate courts have adopted section 22 of the Restatement (Second) of Judgments,[7] which reads as follows:

> (1) Where the defendant may interpose a claim as a counterclaim but he fails to do so, he is not thereby precluded from subsequently maintaining an action on that claim, except as stated in Subsection (2).
>
> (2) A defendant who may interpose a claim as a counterclaim in an action but fails to do so is precluded, after the rendition of

---

[5] Hay Group's civil conspiracy claims are not based on these facts, so we will treat the civil conspiracy claims as not raised on appeal.

[6] *See Otos Tech Co. Ltd. v. OGK Am., Inc.*, 653 F.3d 310, 312–13 (3d Cir. 2011) (applying New Jersey state law to a question of whether to grant full faith and credit to a Korean judgment).

[7] *Del Turco v. Peoples Home Sav. Ass'n*, 478 A.2d 456, 463 (Pa. Super. Ct. 1984) (first adoption); *accord Rearick v. Elderton State Bank*, 97 A.3d 374, 384–85 (Pa. Super. Ct. 2014).  The Supreme Court of Pennsylvania has not reached the question of whether counterclaims not brought elsewhere are subject to the Restatement.

judgment in that action, from maintaining an action on the claim if:

(a) The counterclaim is required to be interposed by a compulsory counterclaim statute or rule of court, or

(b) The relationship between the counterclaim and the plaintiff's claim is such that successful prosecution of the second action would nullify the initial judgment or would impair rights established in the initial action.[8]

As section 22(2)(a) makes clear, the operative question is whether Hay Group was required to bring its counterclaim in the German litigation, a question of foreign law. Under Federal Rule of Civil Procedure 44.1, the law of foreign countries is to be treated by our federal courts as a question of law rather than

---

[8] Restatement (Second) of Judgments § 22 (1980).

a fact to be proven.[9]   Our review of the District Court is therefore de novo.[10]

The District Court correctly identified a facial disagreement between the parties' expert reports on the question of whether Hay Group's counterclaim was required to be brought in Germany.   The Hay Group expert, Dr. Fischinger, stated that in the German courts "there is no legal rule of compulsory counterclaim" and that "a plaintiff is free to either (i) file a counterclaim ('Widerklage') or (ii) sue the plaintiff in a completely different lawsuit in the same or a different court."[11]  Schneider's expert, Dr. Thees, instead noted that "all counter claims against a claim are made by the defendant prior to the last oral hearing in the court of first instance in order to avoid that such counter claims are barred ('präkludiert')" and that counterclaims "can only be considered by the court of second instance if the relevant party can prove

---

[9] *See* Fed. R. Civ. P. 44.1 ("The court's determination must be treated as a ruling on a question of law."); Arthur R. Miller, *Federal Rule 44.1 and the "Fact" Approach to Determining Foreign Law: Death Knell for a Die-Hard Doctrine*, 65 Mich. L. Rev. 613, 661 (1967) ("[I]t must be remembered that one of the policies inherent in Rule 44.1 is that, whenever possible, foreign-law issues should be resolved on their merits and on the basis of a full evaluation of the available materials."); *see also* Matthew J. Ahn, Note, *44.1 Luftballons: The Communication Breakdown of Foreign Law in the Federal Courts*, 89 N.Y.U. L. Rev. 1343, 1353–61 (2014) (noting, consistent with the purpose of Rule 44.1, proactive and sua sponte determinations and redeterminations of foreign law).

[10] *Ferrostaal, Inc. v. M/V Sea Phoenix*, 447 F.3d 212, 216 (3d Cir. 2006).

[11] App. 2038.

that it did not act negligently by not asserting the means of defense earlier."[12]  Rather than resolving this dispute of law, though, the District Court found that the reports agreed that Hay Group *could have* raised its current claims as counterclaims in the German litigation and deemed the entire action precluded.  This was error.

We must, therefore, address the dispute over German law and determine whether Hay Group was required to bring its counterclaims in the German litigation.[13]  Secondary sources unequivocally agree that German defendants are not required to file any counterclaims within the same suit.  "In German . . . law the matter [of allowing counterclaims] is left to the discretion of the court."[14]  Legal systems outside the United States "do not expressly provide for compulsory counterclaims, except in specialized proceedings . . .; in all other cases a respondent who failed to bring a counterclaim is not precluded from doing so in the future because of the effect of *res judicata* of a judgment concerning the plaintiff's claim."[15]  "The German code, ZPO § 322(1), specifies: 'Judgments are able to attain legal force only insofar as they decide the demand raised by the complaint or counterclaim,'" which indicates that preclusive effect does not attach to

---

[12] App. 18.

[13] In resolving this dispute, "the court is not limited by material presented by the parties; it may engage in its own research and consider any relevant material thus found." Advisory Committee's Note to Rule 44.1.

[14] Constantine Antonopoulos, *Counterclaims Before the International Court of Justice* 11 (2011).

[15] *Id.* at 12.

11

counterclaims not actually raised.[16]  Dr. Fischinger's report also cites to numerous judicial and secondary sources that support this conclusion.[17]  We hold, therefore, that German law did not require Hay Group to file a counterclaim.  Thus, Hay Group is not precluded from maintaining this action under section 22(2)(a).[18]

Our inquiry, however, does not end there.  Section 22(2)(b) of the Restatement requires us to consider whether the

---

[16] Kevin M. Clermont, *Res Judicata as Requisite for Justice*, 68 Rutgers U. L. Rev. 1067, 1096 n.105 (2016) (quoting Oscar G. Chase et al., *Civil Litigation in Comparative Context* 461 (2007)).

[17] App. 2038–39 ("A duty to file a counterclaim neither follows from [ZPO] § 261 . . . nor from any other statutory provision." (quoting Karsten Otte, *Umfassende Streitentscheidung durch Beachtung von Sachzusammenhängen* 234 (1998))).

[18] While this appears directly contrary to Dr. Thees's unequivocal statement that claims not raised are barred, an apparent definition resolves this tension.  Dr. Thees specifically notes that a "court of second instance" is typically barred from considering counterclaims, App. 18, but a court of second instance usually refers to an appellate court, not a court considering a second suit.  *Court of Second Instance*, Oxford Reference, http://www.oxfordreference.com/view/10.1093/oi/authority.2 0110810104700526 (last visited April 1, 2019) ("A court exercising jurisdiction to rehear a case de novo (see rehearing), or its appellate jurisdiction to hear an appeal, from the court of first instance in which the matter originated. See also court of last resort.").  Read in this manner, Dr. Thees's statements are inapplicable and thus irrelevant to the instant case.

German litigation would be nullified if Hay Group prevailed in the instant action. In the case of Hay Group's contract assignment claim, the answer is clearly yes. Hay Group's theory is that Schneider interfered with the contract assignment, rendering the assignment, and Schneider's subsequent termination, invalid.[19] Their requested relief on the contract assignment claim is exactly the amount for which the Hay entities were liable to Schneider in the German litigation. If Hay Group should prevail on this claim, it would clearly nullify the German judgment. Therefore, under section 22(2)(b), Hay Group's contract assignment claim is still precluded.

Hay Group argues that the discovery of the relevant facts did not occur until after the German litigation started; thus, those facts cannot be precluded. This argument is inconsistent with the principles of finality and comity that underlie the doctrine of preclusion. To the extent that newly discovered facts might call into question the German judgment, the Hay entities are limited to the collateral attacks that may exist in the German legal system. Those options cannot be expanded through a suit in the American courts.

---

[19] App. 132 ¶ 104 ("As a result of Schneider's breach of his fiduciary duty to Hay Management to ensure that his employment agreement was assigned by [Hay Netherlands] to Hay German, Hay Management became the Hay Group entity responsible for the vast majority of the judgment in the German litigation, and thus had to pay $13,794,591.37, while Schneider, who breached his fiduciary duties, benefited by a similar amount.")

The sham investigation claim is a different matter. The German court did not rely on the sham investigation of Kaye in its 2014 decision, which focused on the salary manipulation charges involving Boller-Bockius and others. The amount in controversy under this claim is a combination of costs for the law firm conducting the sham investigation as well as lost productivity, costs that were never an issue in the German litigation. This claim therefore does not seek to nullify the German judgment or impair rights established by it. Therefore, Hay Group's sham investigation claim is not precluded.

III

Hay Group's sham investigation claim must still independently survive summary judgment. Schneider moved for summary judgment on the basis that the Delaware Business Judgment Rule barred the sham investigation claim.[20] A party moving for summary judgment must demonstrate that there is no genuine dispute of material fact.[21] Under the business judgment rule, such a dispute includes whether Schneider "breached [his] fiduciary duty of care or of loyalty or acted in

---

[20] Schneider also moved for summary judgment on the theory that Pennsylvania law requires Hay Group to quantify its damages and that Hay Group did not sufficiently do so. However, Hay Group quantified the fees paid to the first law firm as a result of the sham investigation as roughly $83,000, which is sufficiently specific to survive summary judgment.

[21] *Bland v. City of Newark*, 900 F.3d 77, 83 (3d Cir. 2018). When ruling on a motion for summary judgment, all reasonable inferences are to be made in favor of the nonmoving party. *Nat'l Amusements Inc. v. Borough of Palmyra*, 716 F.3d 57, 62 (3d Cir. 2013).

bad faith."[22] There are numerous facts here that directly call into question whether Schneider acted in bad faith in handling the investigation. Schneider's dispute with Kaye resulted from a series of actions Schneider took to allegedly enrich himself and Boller-Bockius at the expense of the Hay entities. Hay Group contends that the claims against Kaye which were being investigated were all unfounded and in many cases factually inconsistent; this supports a potential inference of bad faith. The parties also genuinely dispute whether Schneider, over a contrary recommendation, chose the initial law firm to investigate Kaye. There are sufficient disputes of fact to make an award of summary judgment inappropriate on the question of Schneider's bad faith. We will remand this claim to the District Court for further proceedings.

## IV

Because section 22 of the Restatement (Second) of Judgments does not bar Hay Group's sham investigation claim and because that claim can survive Schneider's motion for summary judgment, we will partially vacate the District Court's grant of summary judgment and remand the sham investigation claim for further proceedings consistent with this opinion; we will affirm the grant of summary judgment of the contract assignment claim.

---

[22] *In re Walt Disney Co. Derivative Litig.*, 906 A.2d 27, 52 (Del. 2006).