**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 10, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

CEW PROPERTIES, INC., d/b/a CEW
Gun Sales,

     Petitioner - Appellant,

v.

U.S. DEPARTMENT OF JUSTICE,
BUREAU OF ALCOHOL, TOBACCO,
FIREARMS, AND EXPLOSIVES,

     Respondent - Appellee.

No. 19-6114

_____

**Appeal from the United States District Court**
**for the Western District of Oklahoma**
**(D.C. No. 5:18-CV-00401-C)**
_____

Orion A. Strand (Richard R. Rice with him on the brief), Rice Law Firm, Midwest City, Oklahoma, for Petitioner - Appellant.

Rebecca A. Frazier, Assistant United States Attorney (Timothy J. Downing, United States Attorney, with her on the brief) Oklahoma City, Oklahoma, for Respondent - Appellee.

_____

Before **MATHESON**, **BACHARACH**, and **McHUGH**, Circuit Judges.
_____

**MATHESON**, Circuit Judge.
_____

CEW Properties, Inc., is a firearms dealer licensed by the U.S. Department of Justice, Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"). Charles E. Wilson owns CEW and applied for the firearms license on its behalf.

In 2017, ATF conducted a compliance inspection of CEW. ATF inspectors found that CEW had failed to (1) record properly the acquisition and disposition of firearms, (2) conduct background checks on transferees, and (3) complete correctly the ATF form that documents the transfer of a firearm. The inspection discovered hundreds of violations. ATF therefore issued a notice to revoke CEW's license.

CEW requested a hearing. It stipulated to the violations but argued they were not "willful." Following the hearing, ATF issued a final notice of revocation.

CEW sought judicial review in district court. The court found the violations to be willful and granted summary judgment for ATF.

Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. **BACKGROUND**

### A. *Legal Background*

Congress enacted the Gun Control Act of 1968 to help prevent prohibited individuals from obtaining firearms. *See, e.g.*, *United States v. Marchant*, 55 F.3d 509, 513 (10th Cir. 1995). The Act requires anyone who deals in firearms to obtain a federal firearms license from ATF. *See, e.g.*, *id.*; *see also* 18 U.S.C. § 923(a); 28 C.F.R. § 0.131. The Act and its implementing regulations establish rules that licensees must follow. *See, e.g.*, 18 U.S.C. § 923(g) (creating recordkeeping obligations). The Attorney General has

2

assigned to ATF the responsibility for enforcing these rules. *See* 28 C.F.R. § 0.130. We review the rules that are pertinent to this case as follows.

### 1. Revocation

ATF may revoke a firearms license if a licensee "willfully violate[s]" the Gun Control Act or its associated regulations. *See* 18 U.S.C. § 923(e); 27 C.F.R. § 478.73(a). The parties here agree that ATF could revoke a license based on one willful violation alone. *See* Aplt. Br. at 14; Aplee. Br. at 25 n.11; *see also Borchardt Rifle Corp. v. Cook*, 684 F.3d 1037, 1042 (10th Cir. 2012); *Fairmont Cash Mgmt., L.L.C. v. James*, 858 F.3d 356, 362 (5th Cir. 2017).

"[T]he willfulness requirement . . . is met by plain indifference toward known legal obligations." *Borchardt*, 684 F.3d at 1042. A "court may infer willful omission from a defendant's plain indifference to a legal requirement to act if the defendant (1) knew of the requirement or (2) knew generally that his failure to act would be unlawful." *Id.* at 1043 (quotation omitted). "[C]ircumstantial evidence can suffice to establish [this] state of mind." *Id.*

### 2. Regulatory Requirements

Licensed firearm dealers must follow various recordkeeping requirements when they transfer firearms. *See* 18 U.S.C. § 923(g)(1)(A). A licensee violates the law when it fails to maintain proper records. *See id.* § 922(m). The requirements at issue here concern (a) the acquisition and disposition ("A&D") book, (b) the National Instant Criminal Background Check System ("NICS") inquiry, and (c) ATF Form 4473.

3

a. *A&D book*

Licensees must record their acquisition and disposition of firearms. *See* 27 C.F.R. § 478.125(e). The record must include information about the transaction, including the firearm's serial number, the date, and the name of the person from whom the firearm was received or to whom it was transferred. *See id.* The record also must be "maintained in bound form." *Id.*

b. *NICS inquiry*

A licensee must conduct background checks on transferees and record the results through the NICS. *See* 18 U.S.C. § 922(t); *see also* 27 C.F.R. §§ 478.102, 478.124(c)(3)(iv).[1] This check helps ensure that the transferee may legally receive a firearm. *See* 27 C.F.R. § 478.102(a)(2)(i).

c. *Form 4473*

When a licensee transfers a firearm, the licensee must create a record of this transaction on Form 4473. *See id.* § 478.124(a). Form 4473 includes various fields, including one to indicate the type of identification presented by the transferee. *See id.* § 478.124(c)(3)(i).

---

[1] Under certain circumstances, law enforcement officers can receive firearms without needing to follow all these procedures. *See* 27 C.F.R. § 478.134. But this exception carries additional requirements, like having the law enforcement officer present a letter on official letterhead, *id.* § 478.134(a), and is not relevant here.

B. *Factual Background*

CEW is a corporation licensed by ATF to deal firearms. Its sole owner is Mr. Wilson, who once served as a reserve deputy sheriff. He now runs an asset recovery business and operates CEW as a side business.

1. **License Applications**

a. *CEW*

In 2003, Mr. Wilson applied for CEW to receive a firearms license. In 2004, an ATF Industry Operations Investigator conducted an application inspection with Mr. Wilson. In an application inspection, an investigator ensures that an applicant meets the licensing requirements and reviews with the applicant the rules that licensees must follow.

During the inspection, Mr. Wilson signed an acknowledgement that an investigator had reviewed firearms regulations with him and had answered his questions. He acknowledged that the investigator informed him of his responsibilities for maintaining an A&D record, conducting background checks, and reporting firearm transactions on Form 4473. Mr. Wilson also acknowledged his responsibility to familiarize himself with the applicable law. In 2004, following this inspection, CEW received its license.

b. *Licenses for other companies in 1993 and 2012*

In addition to securing a license for CEW in 2004, Mr. Wilson has applied for and received licenses for two other companies. In 1993, Mr. Wilson applied on behalf of

5

American Recovery Specialists, Inc. And in 2012, he applied on behalf of S.B.D. Tactical, Inc. In each instance, ATF reviewed Mr. Wilson's regulatory obligations with him. For approval of his 2012 application, he signed an acknowledgment, as he did for CEW.

## 2. Compliance Inspection of CEW - 2017

In 2017, ATF conducted a compliance inspection of CEW, examining CEW's regulatory compliance during July 20, 2016, to July 25, 2017. Four inspectors participated.

Based on this inspection, ATF issued a notice of revocation to CEW. The notice listed hundreds of Gun Control Act violations, which fell into the three categories discussed below.

### a. *A&D record violations*

CEW did not keep a book recording the acquisition and disposition of its firearms. Rather, it kept incomplete information on a flash drive and in file folders. As a result, 277 firearms that CEW had acquired and 16 firearms that it had transferred or disposed of lacked proper documentation. The improperly documented firearms included machine guns. Further, the compliance inspection revealed that three of CEW's silencers that lacked documentation were missing.

6

b.  *Background check violations*

CEW transferred firearms on seven occasions without conducting background checks on transferees through the NICS.  All of these individuals were law enforcement officers.

c.  *Form 4473 violations*

ATF identified 12 completed Forms 4473,[2] each of which contained at least one error.[3]  For example, CEW twice failed to complete the fields indicating it had verified an identification document from the transferee.  Similarly, CEW failed multiple times to record information on Form 4473 about its NICS inquiry.[4]

3.  **CEW's Response**

During the inspection, Mr. Wilson acknowledged to the investigators that CEW was noncompliant.  He told them:  "Here's what I want you boys to do is give me the letter saying I'm f——d up.  Give me a fine, and tell me what to do to fix it."  App., Vol. I at 104; *see also id.* at 28; App., Vol. III at 411.  Mr. Wilson also signed another form confirming his acknowledgment of firearms regulations.  He inquired only as to why file folders did not meet the A&D record requirements.

---

[2] ATF also identified one instance when CEW should have completed a Form 4473 but did not.

[3] Each form contained multiple fields, and could contain multiple fields related to the same topic, like the NICS inquiry.

[4] Some, but not all, of these instances involved law enforcement officers.

Mr. Wilson also explained his failure to conduct background checks on law enforcement officers. According to one investigator, Mr. Wilson "said he wasn't going to do them on guys that he kicked down doors with who were law enforcement officers. He said . . . if they were able to carry based on their title, then they shouldn't have to do a background check." App., Vol. I at 136; *see also id.* at 28; App., Vol. III at 411. Another investigator reported Mr. Wilson as saying "that these are all fellow officers that I have kicked in doors with and I know them. If I have the head of [a law enforcement agency] here along with other officers, I'm not going to embarrass him by calling in a background check on him." App., Vol. III at 371.[5]

## C. *Procedural Background*

Following the inspection, ATF issued a notice of revocation. CEW timely requested an administrative hearing, which occurred in 2018. At the informal hearing, CEW stipulated to all the violations but argued they were not "willful." The hearing officer, an ATF Director of Industry Operations, determined the violations were willful and issued a final notice of revocation.[6]

---

[5] During the ATF hearing, Mr. Wilson attempted to clarify his meaning: "I don't think I said, I'm not going to do it. I said, I just didn't do it. . . . I would never tell . . . any government agency or anybody that's regulating me I'm just not going to do it, no matter what you say." App., Vol. I at 141; *see also id.* at 28; App., Vol. III at 411.

[6] In its notice of revocation, ATF described the hearing process to CEW. Typically, a hearing officer conducts the proceedings and prepares a report to the Director of Industry Operations ("DIO"). The DIO then makes the final revocation decision. Here, the hearing officer also was the DIO.

CEW timely petitioned the Western District of Oklahoma for judicial review. ATF moved for summary judgment. It argued "[t]here [wa]s ample, uncontroverted evidence that CEW willfully failed to comply with the [Gun Control Act's] recordkeeping requirements," and thus ATF was entitled to "judgment as a matter of law." App., Vol. I at 19.

The district court found CEW's violations were willful. It pointed to the "amount of information and training Mr. Wilson had received," his affirmations that "he understood he needed to familiarize himself with federal firearms regulations," and the "length of time" CEW had held its license. *See* App., Vol. III at 458. The court also found that CEW "failed to raise a genuine issue of material fact regarding any of its violations." *Id.* at 459.[7] It therefore granted ATF's motion and affirmed the revocation. CEW appeals.

## II. **DISCUSSION**

CEW contests the district court's finding that its violations of the Gun Control Act were "willful." Because there is no genuine dispute the evidence was sufficient for ATF to conclude that CEW willfully violated firearms regulations, we affirm.

---

[7] In district court, CEW contested whether its A&D records were noncompliant. But CEW stipulated to all the charges at the ATF hearing. On appeal, CEW disputes only the willfulness of its violations.

9

## A. *Additional Legal Background*

### 1. Standard of Review

"We review a district court's grant of summary judgment de novo, applying the same legal standard as the district court." *Parker Excavating, Inc. v. Lafarge W., Inc.*, 863 F.3d 1213, 1220 (10th Cir. 2017) (quotation omitted). A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In applying this standard, [the court] view[s] the evidence and the reasonable inferences to be drawn from the evidence in the light most favorable to the nonmoving party." *Parker*, 863 F.3d at 1220 (quotation omitted). A key provision of the Gun Control Act and the challenge to an administrative license revocation informs our review.

### 2. Section 923(f)(3) of the Gun Control Act

Section 923(f)(3) of the Gun Control Act states:

> If after a hearing . . . [ATF] decides not to reverse [its] decision to . . . revoke a license, [ATF] shall give notice of [its] decision to the aggrieved party. The aggrieved party may . . . file a petition with [a] United States district court . . . for a de novo judicial review of such . . . revocation. In a proceeding conducted under this subsection, the court may consider any evidence submitted by the parties to the proceeding whether or not such evidence was considered at the hearing . . . . If the court decides that [ATF] was not authorized to . . . revoke the license, the court shall order [ATF] to take such action as may be necessary to comply with the judgment of the court.

18 U.S.C. § 923(f)(3).

10

Although § 923(f)(3) directs district courts to conduct "de novo judicial review" of revocation decisions, it confines the inquiry to whether ATF was "not authorized to . . . revoke the license." *See* 18 U.S.C. § 923(f)(3); *see also Borchardt*, 684 F.3d at 1042 (stating that a court may intervene in a revocation decision "only if" ATF lacked authorization). "Courts have interpreted the de novo standard of review under 18 U.S.C. § 923(f) narrowly." *Borchardt Rifle Corp. v. Cook*, 727 F. Supp. 2d 1146, 1158 (D.N.M. 2010) (citing *Stein's, Inc. v. Blumenthal*, 649 F.2d 463, 464 n.2 (7th Cir. 1980)), *aff'd*, 684 F.3d 1037 (10th Cir. 2012); *see also id.* at 1158-59 (collecting cases).

### 3. Sufficiency of the Evidence for License Revocation

As previously noted, we review de novo whether "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under § 923(f)(3), the "matter of law" is whether ATF was "authorized to . . . revoke the license." *See* 18 U.S.C. § 923(f)(3). ATF is authorized if a licensee "willfully violated" its regulatory obligations. *See* 18 U.S.C. § 923(e). Because CEW does not contest the violations here, the "material fact" is whether they were "willful."

When reviewing an ATF license revocation based on an administrative record,[8] courts have found summary judgment appropriate when there is "no genuine dispute" as

---

[8] In the district court, CEW supplemented the administrative record with an affidavit from Mr. Wilson, which largely asserted that he was unaware of his noncompliance. This affidavit does not materially alter our inquiry. *See Am. Arms Int'l v. Herbert*, 563 F.3d 78, 79, 81 (4th Cir. 2009) (affirming summary judgment, when "[t]he administrative record was essentially the only evidence before the district court,"

11

to whether the evidence was sufficient to establish a willful violation. *See Borchardt*, 684 F.3d at 1043 n.10 (describing our summary judgment inquiry as "determining whether there was sufficient evidence to conclude that" violations were willful); *Simpson v. Att'y Gen.*, 913 F.3d 110, 116 (3d Cir. 2019) (affirming summary judgment where the "record sufficiently show[ed]" a willful violation); *Nat'l Lending Grp., LLC v. Holder*, 365 F. App'x 747, 749 (9th Cir. 2010) (unpublished) (rejecting licensees' claim that evidence was "insufficient" on "willfulness" to revoke firearms license).[9]

The ATF regulations do not specify what constitutes sufficient evidence to authorize a firearms license revocation, but they do state that revocation of an explosives license requires "a preponderance of the evidence" following a hearing. *See* 27 C.F.R. § 771.80 (stating that in a hearing to revoke an explosives license, "the burden of proof is on the Government to show that [ATF] had reason to believe that the licensee . . . is not entitled to a . . . license," and "[t]he Government must meet this proof by a preponderance of the evidence"). Although preponderance appears to be the proper standard here, our case law acknowledges that in informal agency hearings without an established burden of proof, the clear and convincing standard might apply "where

---

even though an appellant "provided . . . his own affidavit in which he denied that any of the violations for which he was cited by the ATF were willful").

[9] CEW agrees with this approach, framing the question as "whether sufficient evidence in the record exists that the licensee in this case willfully violated the Gun Control Act," Aplt. Br. at 6. ATF also agrees. *See* Aplee. Br. at 4 ("[T]here is sufficient contextual evidence of Wilson's willfulness to affirm the ATF's revocation of CEW's [license].").

12

particularly important individual interests or rights are at stake." *See Bender v. Clark*,

744 F.2d 1424, 1429-30 (10th Cir. 1984) (quoting *Herman & MacLean v. Huddleston*,

459 U.S. 375, 389 (1983)); *see also id.* (citing *Sea Island Broad. Corp. v. FCC*, 627 F.2d

240, 244 (D.C. Cir. 1980), for the proposition that "where [a] license revocation [is]

tantamount to loss of livelihood, [the] clear-and-convincing standard [is] applicable," but

"otherwise, [the] preponderance standard may be appropriate"). We need not decide here

which of these evidentiary burdens must be met to constitute sufficient evidence to

authorize revocation, as the evidence sufficed under either burden.[10]

Courts also have said "[s]ummary judgment is appropriate in a de novo review of

the ATF's administrative record when the material facts developed at the administrative

hearing are not substantially drawn into question by the party petitioning for review."

*Borchardt*, 727 F. Supp. 2d at 1159 (citing *Cucchiara v. Sec'y of the Treasury*, 652 F.2d

28, 30 n.1 (9th Cir. 1981)); *accord Stein's, Inc. v. Blumenthal*, 649 F.2d 463, 468 n.7 (7th

Cir. 1980).[11] Thus, when the evidence before the agency showed that ATF was

---

[10] We note, though, that the authorities suggest the preponderance standard applies. *See Bender v. Clark*, 744 F.2d 1424, 1429 (10th Cir. 1984) (stating that "[t]he traditional standard required in a civil or administrative proceeding is proof by a preponderance of the evidence," and that even in informal hearings, "[t]he traditional preponderance standard must be applied unless the type of case and the sanctions or hardship imposed require a higher standard"); *see also* 2 Kristen E. Hickman & Richard J. Pierce, Jr., *Administrative Law Treatise* § 9.7 (6th ed. 2019) ("[T]he preponderance of the evidence standard of proof applies to the vast majority of agency actions.").

[11] In *Stein's*, the Seventh Circuit observed:
> It is true that procedurally this case was decided on a motion
> for summary judgment where technically fact finding is
> inappropriate and all reasonable inferences must be drawn in

13

authorized to revoke a license and the petitioner has not substantially drawn the material facts developed at the administrative hearing into question, the evidence was sufficient, and we will affirm summary judgment.

---

> favor of the party opposing the motion. Nevertheless, because the procedure for review pursuant to 18 U.S.C. § 923(f)(3) permits the district court to enter judgment on the basis of the administrative record when no substantial reason to receive additional evidence is present, the practice of the courts has been to grant judgment summarily when the "material facts developed at the administrative hearing, which the court also concludes justify nonrenewal" are not substantially drawn into question by the party petitioning for review.

*Stein's, Inc. v. Blumenthal*, 649 F.2d 463, 468 n.7 (7th Cir. 1980) (quoting *Mayesh v. Schultz*, 58 F.R.D. 537, 539 (S.D. Ill. 1973)); *accord Cucchiara v. Sec'y of Treasury*, 652 F.2d 28, 30 n.1 (9th Cir. 1981); *see also Am. Arms Int'l v. Herbert*, 563 F.3d 78, 79, 86 n.12 (4th Cir. 2009) (in affirming a grant of summary judgment for ATF, stating that the administrative "record, unless somehow contradicted, satisfie[s] the [agency's] initial burden of demonstrating the absence of any genuine issue of [material] fact" (alterations in original) (quoting *Langston v. Johnson*, 478 F.2d 915, 918 n.17 (D.C. Cir. 1973))).

Wright & Miller conclude that "[s]ummary judgment is particularly appropriate in cases in which the court is asked to review or enforce a decision of a federal administrative agency." 10B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2733 (4th ed., Oct. 2020 update). This is so because of "the relationship between the summary-judgment standard of 'no genuine dispute as to any material fact' and the nature of judicial review of administrative decisions." *Id.* Specifically, because "the administrative agency is the 'fact finder,'" a court on "[j]udicial review has the function of determining whether the administrative action is consistent with law—that and no more." *Id.* (quoting Louis L. Jaffe, *Judicial Control of Administrative Action* 595 (1965)). A motion for summary judgment, therefore, allows "the court [to] take[] the facts as found by the agency and simply appl[y] the law to them so that there often is no need for a trial." *Id.*

B. *Analysis*

For a violation to be willful, CEW must have (1) known and (2) been plainly indifferent to its legal obligations. *See Borchardt*, 684 F.3d at 1042. The evidence sufficiently established both elements. This evidence included (1) the training Mr. Wilson received and the related acknowledgments he signed; (2) the magnitude of CEW's violations; (3) CEW's periodic compliance, which showed Mr. Wilson knew how to meet CEW's obligations; (4) the length of time CEW held its license; and (5) Mr. Wilson's statements to investigators.

1. **Training and Acknowledgments**

The training Mr. Wilson received and his acknowledgments of this training not only showed knowledge of his legal obligations but also his indifference to them. *See Simpson v. Att'y Gen.*, 913 F.3d 110, 114-15 (3d Cir. 2019) (finding evidence of willfulness where a licensee "met with ATF officials three times about his [licenses]" and noting that the licensee "signed a form acknowledging that he discussed various regulatory topics with the ATF"). Mr. Wilson's related acknowledgments of his responsibility to inform himself of his legal obligations provided similar support. *See id.* at 112 (noting that the licensee "signed an Acknowledgement of Federal Firearms Regulations, certifying that he understood his responsibility to learn and follow all laws and regulations governing his [license]"). In *Simpson*, for instance, the Third Circuit concluded that, among other things, a licensee's "receiv[ing] training on his obligations

15

and explicitly acknowledg[ing] that he understood his [Gun Control Act] obligations . . . demonstrate [his] plain indifference to the [Gun Control Act]'s requirements." *Id.* at 116.

Here, ATF reviewed the Gun Control Act's requirements with Mr. Wilson during CEW's application inspection. This training covered CEW's obligations with respect to each category of its violations—the "Acquisition and Disposition Record," "NICS," and "ATF Form 4473." *See* App., Vol. III at 366; *see also* App., Vol. I at 27; App., Vol. III at 410. Further, Mr. Wilson signed a statement confirming that an investigator informed him of these requirements. And Mr. Wilson signed a statement acknowledging his responsibility as a licensee to inform himself of his legal obligations.

Moreover, ATF trained Mr. Wilson when he applied for a firearms license in 1993 and 2012. Each time, ATF reviewed with him his legal obligations as a licensee. As recently as 2012—when Mr. Wilson applied for a firearms license for S.B.D. Tactical, Inc.—he signed a form attesting to his training and acknowledging his responsibility to educate himself on his obligations as a licensee.

CEW argues that some of its violations resulted from misunderstanding its legal obligations. For example, it contends "Mr. Wilson honestly, albeit erroneously, believed" that he did not need to conduct background checks on law enforcement officers, as "they had already passed every background check necessary to hold their positions in the first place." Aplt. Br. at 11-12. But the evidence showed that Mr. Wilson received instruction specifically addressing the requirements for selling firearms to law enforcement officers.

16

## 2. Magnitude of Violations

The magnitude of the violations—both their quantity and seriousness—can support a finding of willfulness. *See Fairmont Cash Mgmt., L.L.C. v. James*, 858 F.3d 356, 362 (5th Cir. 2017) ("A single willful violation authorizes the ATF to revoke the violator's [license], regardless how severe, though the frequency and severity of the violations can be relevant to willfulness.").

At CEW, ATF discovered hundreds of violations. Some could have caused significant harm. For example, CEW's failure to keep proper A&D records could have contributed to Mr. Wilson's unawareness that CEW was missing several firearms. *See RSM, Inc. v. Herbert*, 466 F.3d 316, 324 (4th Cir. 2006) ("When a firearms dealer cannot account for guns or fails to ensure that guns are sold to authorized persons, the public safety is directly and meaningfully implicated."). And by not conducting background checks, CEW could have provided a firearm to a prohibited individual.

CEW suggests that the "mere number" of violations alone cannot show willfulness. *See* Aplt. Br. at 15. But at least some of the violations ATF discovered were significant.

## 3. Periodic Compliance

Periodic compliance—that is, a licensee's occasional adherence to regulatory obligations—can support a finding of willfulness. *See Simpson v. Att'y Gen.*, 913 F.3d 110, 115-16 (3d Cir. 2019) (noting that a licensee's "full compliance with [Gun Control Act] requirements in some instances belies his assertion that he did not understand those

17

requirements," and his "inconsistent conduct suggests both that [he] knew of his obligations and was indifferent to complying with them").

CEW completed certain fields on Form 4473 on some occasions but did not do so on others. It argues that such violations represent "human error," Aplt. Br. at 19, and that "willfulness . . . does not demand perfection from licensees—it leaves room for the occasional incident of human error," *id.* (alteration in original) (quoting *Am. Arms Int'l v. Herbert*, 563 F.3d 78, 87 (4th Cir. 2009)).

But the violations went beyond mere inadvertence. CEW omitted key information from some of its Forms 4473 that it included on others. For example, it both succeeded and failed to (1) complete fields indicating the date of the transaction; (2) complete fields indicating it had verified the identity of the transferee; and (3) sign the certification attesting that the transferee was allowed to receive a firearm. This pattern showed that CEW was capable of completing any given field without error, but frequently failed to do so.

Equally telling, CEW committed a violation on every Form 4473 ATF reviewed. All 12 Forms 4473 CEW completed during the inspection period lacked requisite information. This pattern showed that CEW committed serial and pervasive mistakes, hardly the product of inadvertence.

4. **Length of Time Licensed**

Courts also consider the length of time an individual has been licensed as relevant to willfulness. *See 3 Bridges, Inc. v. United States*, 216 F. Supp. 2d 655, 659 (E.D. Ky.

18

2002) ("Petitioner was aware of the law concerning maintenance of the A & D book and completion of ATF Form 4473, as he has been a dealer for 10 years . . . .").

CEW held its license for over 10 years before the compliance inspection. And over 10 years before CEW acquired its license, Mr. Wilson had applied for and received a firearms license for another business.

CEW argues that because it was a "low volume" dealer, the length of time it was licensed did not support a finding of willfulness. *See* Aplt. Br. at 21-22. But CEW engaged in multiple transactions during the inspection period, and Mr. Wilson had more than 10 years of experience in the business with CEW along with his other two licenses. He first successfully applied for a firearms license nearly a quarter century before the compliance inspection at issue.

### 5. Mr. Wilson's Statements to Investigators

Mr. Wilson admitted he knew his legal obligations regarding background checks but still violated them. An investigator reported Mr. Wilson as saying he did not want to embarrass a law enforcement official by conducting a background check on him, which showed Mr. Wilson knew he should have conducted a background check and did not. *See Perri v. Dep't of Treasury, ATF*, 637 F.2d 1332, 1336 (9th Cir. 1981) (stating that when a licensee was able to explain his compliance obligations but violated them nonetheless, his violation could be found willful).

* * * *

19

The evidence as to Mr. Wilson's training and acknowledgements, the magnitude of CEW's violations, CEW's periodic compliance, the length of time CEW was licensed, and Mr. Wilson's statements to investigators was more than sufficient to show that CEW both knew of its legal obligations and plainly disregarded them. CEW's violations of the Gun Control Act were therefore willful, and ATF was authorized to revoke its license.[12]

## III. **CONCLUSION**

We affirm the district court's judgment.

---

[12] CEW argues that ATF never warned Mr. Wilson that his violations could result in revocation. Although prior warnings can establish willfulness, *see Borchardt*, 684 F.3d at 1043, they are not necessary for such a finding, *see Nat'l Lending Grp., LLC v. Holder*, 365 F. App'x 747, 749 (9th Cir. 2010) (unpublished). Indeed, CEW concedes this point. *See* Aplt. Br. at 18 ("This is not to imply that willfulness could never be found absent repeat violations . . . .").

CEW also points to its efforts to remedy its noncompliance by compiling its A&D records into a bound book as showing a lack of willfulness. But such post hoc remedial efforts have little bearing on CEW's willfulness at the time of the violation. *See Shawano Gun & Loan, LLC v. Hughes*, 650 F.3d 1070, 1079 (7th Cir. 2011) (noting that "workplace changes to ensure compliance with federal firearms laws" following a revocation notice "come too late," and that the promise to "do better if given another chance is not an argument that reaches the merits of the case"); *Cucchiara v. Sec'y of Treasury*, 652 F.2d 28, 30 (9th Cir. 1981) (concluding that a licensee's attempt to "correct his faulty recordkeeping system, after the violations . . . is immaterial to the question of willfulness at the time the violations occurred").